ROBERT BARTLETT, ET AL., Appellants, *v.* THE BOARD OF TRUSTEES OF THE WHITE PINE COUNTY SCHOOL DISTRICT, Respondent.

No. 8434

June 7, 1976                    550 P.2d 416

[Rehearing denied July 2, 1976]

*Hilbrecht, Jones, Schreck & Bybee,* of Las Vegas, for Appellants.

*Julian C. Smith, Jr.,* of Carson City, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

This appeal is from a judgment of the district court refusing to enjoin the decision of the White Pine County School Board to close Lund High School with approximately 30 students, and to bus them 40 miles to the White Pine High School in Ely where 700 to 800 students are enrolled. The Board consists of 7 members. The vote for closure was 4 to 3. It was contended

below, and now in this court, that the information before the Board which prompted a majority to favor closure was erroneous and the decision, therefore, arbitrary and capricious.

Lund High School had been in existence for more than 50 years serving the Lund, Preston and White River Valley communities as an educational, cultural and social center. The area is primarily agricultural in character. Although the curriculum at Lund High was less broad than that offered at White Pine High, it was specially structured to meet the needs of an agricultural area in that it offered a vocational-agricultural course (home economics for girls; mechanics, stock raising and farming for boys) not offered at White Pine. Every student at Lund High took that course.

The teacher-pupil ratio at Lund was approximately 1 to 9, and at White Pine, 1 to 17. It costs about twice as much to educate a student at Lund as it does at White Pine.

The matter of closing Lund High first was presented to the Board at executive session by Arthur Anderson, a new member. One month later, at a regular meeting of the Board, Mr. Anderson moved to close Lund High. His motion was based solely upon his personal study of the financial condition of the White Pine School District. His study projected a $75,000 deficit for the 1975–76 school year which he proposed to eliminate by closing Lund High. His motion was seconded, but action thereon deferred until March 10, 1975, the next regular meeting of the Board. Insofar as the record reveals, the Superintendent of the School District had not recommended the closure of Lund High at any time.

The March 10 public meeting was well attended. Approximately 32 citizens and 3 board members spoke in favor of keeping Lund High open. Two board members spoke for closure. When the meeting concluded, the Board voted 4 to 3 for closure.

The White Pine County Grand Jury, the County Commissioners and the three dissenting board members requested reconsideration. Their request was accommodated and another hearing was held on April 10. Notwithstanding the apparent public sentiment to keep Lund High viable, the vote of the members of the School Board did not change. This litigation followed.

The Board of School Trustees is given the power ". . . as may be requisite to attain the end for which the public schools are established and to promote the welfare of school children including the establishment and operation of schools deemed necessary and desirable." NRS 386.350. Moreover, the Board

specifically is invested with authority to change the location of schools, NRS 393.080, and school-house sites, NRS 393.150, and to furnish transportation for pupils, NRS 392.300.

When the Board's exercise of conferred power is challenged through a court proceeding, court inquiry is limited to the record of information presented to the Board, and the court's purpose is to ascertain whether, upon such information, the Board acted arbitrarily, capriciously, and abused its discretion. Urban Renewal Agcy. v. Iacometti, 79 Nev. 113, 118, 379 P.2d 466 (1963).

The district court found that the Board had acted within permissible limits of its discretion. The key to its ruling is the finding that "the information before the Board of Trustees as to the achievement test comparison between Lund High School and White Pine High School was not accurate, and that the amount of savings originally alleged by Trustee Anderson was not correct. However, the fact that it costs twice as much to educate a high school student at Lund as it does at White Pine, and that there is a broader curriculum with counselors at White Pine and a more challenging educational and social environment resulting from the bussing of the Lund High School students to Ely, has not been refuted and was relied upon by the four members of the Board of Trustees to close the Lund High School."

We also have reviewed the record of information presented to the Board. The single item which motivated Trustee Anderson originally to move for the closure of Lund High was his bona fide belief that such closure would be of assistance in meeting a financial crisis. His belief rested upon misinformation and was grossly in error. We agree with the district court that "the amount of savings originally alleged by Trustee Anderson was not correct." Moreover, we are in accord with the district court that the achievement test comparison between the students of the two schools was not accurate and of no value for educational comparison purposes. It also is clear from the record that it costs approximately twice as much to educate a high school student at Lund as it does at White Pine. This, however, inevitably is true whenever a per-pupil cost comparison is made between a rural and an urban school. Consequently, we do not, as did the majority of the trustees and the district court, attribute persuasive force to this statistic. To do so would place the continued existence of rural high schools in extreme jeopardy.

We, therefore, do not consider that finding supportive of closure.

Finally, as above noted, the district court found that a majority of the Board voted to close Lund High because of the broader curriculum at White Pine and a more challenging educational and social environment.

The curriculum at White Pine is broader in scope than that offered at Lund. Like the per-pupil cost comparison, this also may be an inevitable difference between a rural and an urban school. However, it does not necessarily follow from this alone that the quality of education is superior at White Pine when other relevant factors are considered.

On this point, which we deem to be the central issue within the context of this case, the Board was advised by an expert that the bussing of high school students 80 miles a day has a negative effect upon their achievement, reduces the quality of education provided for them, and reduces their participation in school activities. He noted especially the adverse effect of transferring Lund students out of a small class size situation into a larger class size situation. He concluded as follows: "It is my opinion that the students and community of Lund will lose a great deal by the closure of its high school. While the school may not have the latest of equipment and the finest of facilities, the community setting, the community's respect and involvement in school activities and the student's opportunity to attend small classes cannot be ignored. The community of Lund has something very precious to American Education which has been deteriorating in larger communities, and that is the close relationship of the home and the school. These are two very powerful influences which shape the life of future citizens. The positive result when these two influences work hand in hand is obvious. That situation presently exists in the Lund community and the Lund High School."

The quoted statement finds support in much of the other information supplied to the Board. Indeed, we find nothing otherwise in the record except a 1960 study of the White Pine County Schools prepared by consultants from the University of Nevada. That ancient study suggested that the school administration consider closing Lund High and transporting its students to Ely. That suggestion was not followed by the administration or the Board. We deny the relevancy of the 1960 study to the circumstances facing the Board in 1975, and

conclude that it was offered as an excuse rather than a reason for its action.

For the reasons expressed we do not believe that the information before the Board reasonably may be viewed to support the closure of Lund High. Henderson v. Henderson Auto, 77 Nev. 118, 122, 359 P.2d 743 (1961). Therefore, we annul that action and direct that Lund High School be reopened commencing with the 1976–77 school year.

Reversed.

GUNDERSON, C. J., and BATJER, ZENOFF, and MOWBRAY, JJ., concur.