CONRAD LAPINSKI, APPELLANT, v. CITY OF RENO, NEVADA; CARL BOGART, MAYOR; PATRICIA LEWIS, MARCEL DURANT, CLYDE BIGLIERI, BRUNO MENICUCCI, NICK LAURI, AND BILL GRANATA, CITY COUNCIL THEREOF; AND ROBERT H. OLDLAND, CITY MANAGER, RESPONDENTS.

No. 9854

December 14, 1979                                    603 P.2d 1088

*James C. Van Winkle,* Reno, for Appellant.

*Louis S. Test,* City Attorney, and *Lance R. Van Lydegraf,* Assistant City Attorney, Reno, for Respondents.

## OPINION

*Per Curiam:*

By petition for writ of mandate in the court below, Conrad Lapinski, appellant herein, challenged the Reno City Council's refusal to reinstate him to the position of City Traffic Safety Engineer. The trial court dismissed the petition. Lapinski also sought a writ of certiorari and damages but neither issue is before the court. The parties stipulated that further hearing on the question of damages would be held at a later time, if necessary.

Lapinski was recruited for the position with the City of Reno by former City Manager Joe Latimore in 1974, while Lapinski was employed by the City of Riverside, California, as traffic engineer. The Reno City Council confirmed Lapinski's appointment after an interview. His employment with the City began in September, 1974, and continued until June 18, 1975 (his last date of pay).

After Lapinski had been hired as City Traffic Safety Engineer, the Reno city government underwent changes. The office of traffic engineer was placed under the supervision of the Director of Public Works, Jack Easley. Robert H. Oldland, one of the respondents herein, had become City Manager. The

day Easley's appointment was confirmed, Lapinski was moved to a garage office so that Easley could take his office. Soon after arrival, Easley refused to approve Lapinski's six-month step increase in pay on the basis that he was not familiar with Lapinski's work. On April 7, 1975, the City Manager requested action on a Council memorandum, seeking traffic changes on Center Street. Easley rewrote Lapinski's memorandum to order the change as requested. On April 23, 1975, Lapinski attended a meeting of traffic engineers in Sacramento, California. On April 24, 1975, Easley recommended to Oldland that Lapinski be fired. Oldland met with Easley and Lapinski on April 24 and April 25, 1975. Oldland placed Lapinski on a thirty-day probationary period, ending May 30, 1975. On June 19, 1975, Easley again recommended Lapinski's termination. Oldland did terminate Lapinski. Lapinski states he was notified of his termination June 20, 1975. Lapinski thereafter sought a public hearing before the City Council to appeal the decision. On June 26, 1975, Easley wrote a memorandum at the request of Oldland detailing "areas of concern" which had led to the termination. On June 27, 1975, Oldland wrote a memorandum to the City Council stating the reasons for Lapinski's termination. The parties throughout the appeal have referred to these memoranda as the "charges" against Lapinski, which will be referred to here as the "memorandum charges." The parties have stipulated that the memorandum charges were before, and considered by, the City Council at the hearing on July 21, 1975, and constituted part of the record before the court below.

The City Council, at their meeting on July 21, 1975, agreed that Lapinski's appearance before them would be a "hearing" and the deputy city attorney present at the meeting advised the Council that the Council had to find there was "legal cause" for Lapinski's termination. The Council allowed Lapinski's attorney to call and examine witnesses and the members of Council asked questions. At the conclusion of the hearing, the Council agreed to continue the matter to another time for a closed personnel hearing, at which Lapinski, his attorney, and Jack Easley were to be present. There is no record of the proceedings in closed session or the persons present. Lapinski claims he was excluded from all but the final discussions.

Although the parties have briefed and argued the question, we need not decide whether language of the Reno City Charter,

Art. III, § 3.020 providing that dismissal be "for cause" mandates a termination hearing.[1] Nor do we decide the nature and extent of any concomitant constitutional provisions if a hearing were mandated.[2] Inasmuch as the City Council agreed on July 21, 1975, to hold a public hearing, we think the City was obliged to afford Lapinski a substantially fair hearing and establish that legal cause did exist for his termination. At this juncture, we deem the City precluded from arguing that no hearing was required.

The determinative issue in this case is whether there was substantial evidence placed before the City Council from which it could have made a finding that legal cause existed to terminate Lapinski's employment with the City of Reno. State ex rel. Sweikert v. Briare, 94 Nev. 752, 588 P.2d 542 (1978); No. Las Vegas v. Pub. Serv. Comm'n, 83 Nev. 278, 281, 429 P.2d 66, 68 (1967). In making this determination, this court, as was the court below, is limited to the record which was before the Council. Alley v. Nevada Real Estate Div., 94 Nev. 123, 575 P.2d 1334 (1978); Barnum v. Williams, 84 Nev. 37, 436 P.2d 219 (1968).

> This court has held "cause" to be:
> . . . legal cause, and not any cause which the officer authorized to make such removal may deem sufficient. It is implied that an officer cannot be removed at the mere will of the official vested with the power of removal, or without any cause. The cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of his duties, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power and equivalent to an arbitrary removal.

---

[1]This section provides:

"The City Manager shall appoint all officers and employees of the City, and may remove *for cause* any officer or employee of the City except as may otherwise be provided in this Charter. . . . The City Council may, by majority vote of all members elected, remove for cause any head of a department or office. (Emphasis added.)

Article IX, § 9.020 exempts the traffic safety engineer from the provisions of the Civil Service Act.

[2]*Cf.* State ex rel. Sweikert v. Briare, 94 Nev. 752, 588 P.2d 542 (1978), wherein this court held that an employee who has obtained a property interest in his employment is entitled to due process constitutional protections.

Ex rel. Whalen v. Welliver, 60 Nev. 154, 158, 104 P.2d 188, 190–191 (1940); Hardison v. Carmany, 88 Nev. 670, 676–677, 504 P.2d 1, 5 (1972).

The City contends that the information set forth in the memorandum charges and the testimony during the Council meeting constitute substantial evidence that Lapinski did not follow and implement City policy or perform his duties properly. The City argues that the cause shown was of a substantial nature and directly affected the rights and interests of the public.

With respect to the Easley memorandum, we note that certain allegations do not clearly refer to times prior to June 19, 1975.[3] Mr. Easley concluded his memorandum as follows:

> If the [sic] I were to summarize, I would put it this way: I do not feel that the City administration can allow, nor condone, insubordination, falsehoods, negligence to problems, the putting off of activities, improper or not planning for the future, disregard for proposal grant funding, non-supervision of his personnel, disregard of employment requirements such as registration, tardiness in responses and poorly written informative memos for your signature.

The City argues that testimony concerning Lapinski's lack of registration as a professional engineer, his trip to Sacramento on April 23, 1975, Lapinski's statement at the hearing that he had trouble taking direction from Easley, unsatisfactory progress with the City bikeway system, inability to get Reno railroad crossings on a priority list for federal funding, and generally unsatisfactory performances of duties is sufficient evidence to support the decision to terminate Lapinski.

Addressing these contentions in order, the job classification for traffic safety engineer refers to registration as a professional engineer in the State of Nevada as a "desirable minimum qualification." Lapinski testified California had recently designated "Traffic Engineer" as a professional specialty and that examination procedures were currently being developed. He testified that the application was first available in May, 1975, and that he had made application to California and to Nevada. We note that when Lapinski was hired, City Council members knew he had not registered. The Council specified no time for him to become registered.

Lapinski testified he made a trip to Sacramento, California for a half-day meeting of the International Traffic Engineers. The agenda included a conference on bikeway systems. Easley

---

[3]See ¶¶ 16–18, 20–22, 24, 25, 27–29.

testified Lapinski took this trip after he told Lapinski not to leave town. The trip was made without his knowledge.[4] Joe Latimore testified Lapinski would not need prior approval for this trip. Easley informed the Council, erroneously, that Lapinski had flown to Sacramento and, later, when challenged, agreed to pay his own expenses. Lapinski in fact drove a City vehicle and paid his own expenses.

Lapinski testified he could get along with Easley. He testified that when given a direct order, he would obey it rather than be insubordinate.

The bikeway project was transferred to Lapinski from the Parks Department. Lapinski testified phase one of the plan was complete and other phases were in progress. When he was terminated the City approval needed to complete the grant request had not been given. The Parks Department made the grant application.

There is evidence in the record that Lapinski had toured Reno and northern Nevada with the State Engineer and others to determine which railroad crossings should be considered for funding. When the list was compiled, none of the Reno locations were included. The State Engineer testified that Lapinski had done all he could have done to obtain financing. Selection of locations was made by others.

A Councilman requested a feasibility study of changes at Center Street in Reno in December, 1974, from the City Manager. On April 7, 1975 he renewed his request. Easley and Lapinski went together to the site but could not agree on the proposed changes. Lapinski's memorandum of April 9, 1975, stated he would seek a legal opinion as to part of the action requested. Easley struck this statement from the memorandum and ordered the changes. The City argues this incident shows Lapinski's lack of respect for his superiors and inability to follow and implement City policy. Lapinski had over $100,000 in his budget which he intended to carry over to the next year. Easley testified it should have been used.

Once Lapinski had produced evidence sufficient to rebut the memorandum charges, the burden shifted to the City to produce further evidence. *Cf.* City of Reno v. Folsom, 86 Nev. 39, 43, 464 P.2d 454, 456–457 (1970) (benefit to property must be shown by agency once validity of assessment is challenged).

Inasmuch as there is no record of what was presented during

---

[4]The memorandum charges indicate the trip was in violation of City resolutions requiring prior authorizations. The resolutions were not made part of the record.

the closed personnel session and the City Council members made no record of their findings, we decline to speculate as to any further evidence the Council may have received to support the charges during the closed personnel session.

The facts in the record do not constitute legal cause for termination. Therefore, the Council abused its discretion in refusing to reinstate Lapinski and the trial court erred in denying the application for writ of mandate. *See* Bartlett v. Board of Trustees, 92 Nev. 347, 550 P.2d 416 (1976); *cf.* Henderson v. Henderson Auto, 77 Nev. 118, 359 P.2d 743 (1961) (Council failed to exercise any discretion as contemplated by statute in denying use permit).

The judgment of the lower court is erroneous and must be reversed. The case is remanded to consider the matter of damages, including any legal or factual issues which may be raised concerning the availability of a set-off for wages appellant has earned elsewhere since his discharge. The lower court is directed to enter an appropriate order reinstating petitioner to his position as Reno Traffic Safety Engineer.