CLARK COUNTY BOARD OF COMMISSIONERS, THALIA DONDERO, DAVID CANTER, SAM BOWLER, ROBERT BROADBENT, MANUEL CORTEZ, AND JACK PETITTI, APPELLANTS, *v.* TAGGART CONSTRUCTION CO., INC., D/B/A W.M.K. TRANSIT MIX, AND GULF OIL CORPORATION, RESPONDENTS.

No. 11418

September 5, 1980        615 P.2d 965

[Rehearing denied December 9, 1980]

TORVINEN, D. J., dissented in part.

*Robert J. Miller,* District Attorney, and *Victor W. Priebe,* Deputy District Attorney, Clark County, for Appellants.

*Morse-Foley,* Las Vegas, for Respondents.

## OPINION

By the Court, Manoukian, J.:

This is an appeal from a declaratory judgment entered by the district court, reversing a determination of the Clark County Planning Department denying respondents' application for permission to make certain capital improvements and expand business activities under an existing variance on respondent W.M.K.'s real property. The sole issue before us is whether the trial court erred in concluding that the zoning variance included the uses asserted by respondents. We hold that the trial court did err.

Respondent, W.M.K., owns approximately 160 acres of real property on the alluvial ledge of the Charleston Range just west of Las Vegas in Clark County. The property has been zoned RE (residential) since 1947 and continued to be so zoned at all times relevant hereto. In 1965, W.M.K. applied for a zoning reclassification from RE to M2 (industrial) for the mining and crushing of gravel, the construction and maintenance of a rock crusher, together with a readymix concrete plant. The request

for a zoning change was denied; however, the Board of County Commissioners approved W.M.K.'s request as a variance for a term of five years. When the variance expired, W.M.K. sought and received a permanent variance consistent with the scope of the variance granted in 1965. The trial court found this to be a continuation of the original 1965 variance without a time limitation.

In the early 1970's, respondent Industrial Asphalt, a division of Gulf Oil Corporation, entered into a lease agreement with W.M.K. Under the terms of the agreement, Industrial Asphalt would construct a mixing plant for asphalt paving provided W.M.K. could obtain a variance or conditional use permit, believed by both parties to be necessary. Between March 1973 and May 1975, W.M.K. filed five applications for permission to build an asphalt mixing plant, all of which were denied by the appellant Board of County Commissioners. It was only when these requests were denied that W.M.K. sought a building permit under an expanded interpretation of the original variance. Nevertheless, the Clark County Planning Department, an arm of the County Commission, denied respondents building permit for an asphalt mixing plant because the property was still zoned RE (residential). Similarly, in December of 1976, the Planning Department denied W.M.K.'s request for a building permit for an equipment maintenance shop because of the property's RE zoning status.

In granting the declaratory judgment in favor of W.M.K., the trial court ruled that their variance "included permissible and reasonable and necessary additions or enlargements to the original use that the property was put to under the variance." The variance was found to include an asphalt plant and a maintenance shop. The trial court accordingly concluded that W.M.K. was entitled to the building permits.

The district court conducted the equivalent of a trial de novo. It made an independent determination that the breadth of the variance included an asphalt mixing plant and a maintenance building. The court erred in doing so. Its province was confined to a review of the record of evidence presented to the Clark County Board of Commissioners and the Planning Department, with its primary focus on the variance itself. Lapinski v. City of Reno, 95 Nev. 898, 901, 603 P.2d 1088, 1090 (1979); Bartlett v. Board of Trustees, 92 Nev. 347, 350, 550 P.2d 416, 417 (1976); Urban Renewal Agcy. v. Iacometti, 79 Nev. 113, 117–20, 379 P.2d 466, 468–69 (1963). We must

review the variance and related proceedings before the commission, and in doing so, determine whether the district court abused its discretion by substituting its judgment for that of the zoning tribunals. Urban Renewal Agcy. v. Iacometti, 79 Nev. at 118–20, 379 P.2d at 468–69. We have reviewed both the commission and district court proceedings and we find and so hold that neither the commission nor the planning department abused their discretion.

A variance is designed to authorize a specific use of property in a manner otherwise proscribed. Because a variance affords relief from the literal enforcement of a zoning ordinance, it will be strictly construed to limit relief to the minimum variance which is sufficient to relieve the hardship. Hazel v. Metropolitan Development Comm'n, 289 N.E.2d 308, 313 (Ind. 1972); Board of Adjustment v. Ruble, 193 N.W.2d 497, 503 (Iowa 1972); 3 R. Anderson, American Law of Zoning § 18.84, at 352 (2d ed. 1977). It should not be construed to include a generic class of uses, or a list of uses.[1] Anderson, *supra,* § 18.71, at 328. In order to determine the scope of the variance, we must consider both the representations of the applicant and the intent of the language in the variance at the time that it was issued. *See* Town of Rye v. Ciborowski, 276 A.2d 482, 485–86 (N.H. 1971).

The variance which W.M.K. acquired in 1965, and which was made permanent in 1970, was for the "mining and crushing of gravel, and to maintain a rock crusher and ready-mix concrete plant." Respondents' application for the original variance was silent as to either an asphalt mixing plant or a maintenance shop, and there was no mention of such uses in W.M.K.'s letter to the Planning Commission prior to the Commission's approval of the permanent variance. Nor does the variance include language which would allow "permissible, necessary and reasonable" additions, as found by the court below. It appears clear that the requested expansion of W.M.K.'s business to include an asphalt plant and a maintenance shop were not uses within the scope of the variances

[1]During oral argument, counsel for respondents stated that we must assume that the variance includes by implication all M–2 11(b) uses under Chapter XXI of Clark County ordinance 61. M–2 11(b) permits the following uses: "Central Mixing Plant for cement, mortar, plaster or paving materials (ready-mix plant)." Respondent has cited no relevant authority in support of this allegation, and we have found none. We are not inclined to make overbroad a variance which is clear and unambiguous on its face.

granted, because such uses were not expressed or anticipated at the time the variances were granted. *See* Dahar v. Dept. of Bldgs., 352 A.2d 404, 405 (N.H. 1976); Frankel v. C. Burwell, Inc., 226 A.2d 748, 751–52 (N.J. 1967).

Zoning is an instrument by which governmental bodies can more effectively accommodate the needs and demands of our growing society. Coronet Homes, Inc. v. McKenzie, 84 Nev. 250, 255, 439 P.2d 219, 223 (1968). Nevertheless, the zoning restrictions must be balanced against the right of a property owner to develop his property to his own economic advantage. It is for this reason that zoning plans, no matter how sophisticated they may be, generally contain, as here, some procedures for granting variances, amendments, special use permits, or exemptions for specific uses of specific parcels of property. Even so, we find nothing present which would provide a basis for judicial interference with administrative prerogatives.[2] It is clear that W.M.K. itself did not believe that the variance included the requested uses, as evidenced by its repeated efforts to obtain either a zoning reclassification or broader variance. It is equally obvious that if the request for enlargements of the existing variance were granted, the activities would substantially exceed the scope of those intended by the variance. In giving deference to the planning process, we subscribe to the view that variances will be strictly construed.

Respondents remaining contentions are without merit. We reverse the judgment of the lower court.

THOMPSON and BATJER, JJ., and ZENOFF, SR. J.,[3] concur.

TORVINEN, D. J.,[1] dissenting in part:

I respectfully dissent as to a part of the majority opinion.

---

[2] During the trial proceedings, respondents produced considerable evidence concerning the quality of gravel on the site, the existence of several other similar businesses in the general locale, one with an asphalt paving plant, and the economics of competition with the other asphalt plant, as well as arguable governmental benefits in the context of governmental bidding. This evidence is not relevant to the issue of whether the contemplated uses transcended the scope of the existing variance. *See* Urban Renewal Agcy. v. Iacometti, 79 Nev. at 118, 379 P.2d at 468.

[3] The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE E. M. GUNDERSON, Justice. Nev. Const., art. 6, § 19; SCR 10.

[1] The Governor designated the Honorable Roy Torvinen, Judge of the Second Judicial District Court, to sit in the place of THE HONORABLE JOHN MOWBRAY, Chief Justice, who was disqualified. Nev. Const. art. 6, § 4.

Respondent W.M.K. Transit Mix obtained a permanent variance from the Board of County Commissioners of Clark County, "for the mining and crushing of gravel, and to construct and maintain rock crusher and ready-mix concrete plant, . . . ." W.M.K. made an application for a building permit to construct a mixing plant for paving material. The application was referred to the Planning Department of Clark County which rejected the permit application. Thereafter W.M.K. applied for a building permit to construct a shop building on the premises to be used for maintenance and repair operations on the mechanical equipment and machinery located on the premises. The building permit for the shop building was also denied. Respondents brought an action in the district court for declaratory judgment. They claim they are entitled to building permits because the variance authorized those uses.

The trial court, in its findings of fact, stated:

> That the variance was permanent and included permissible and reasonable and necessary additions or enlargements to the original use that the property was put to under the variance and the court specifically declares that the use of the property is limited to central mixing plant for cement, mortar, plaster, and paving material ready-mix plant. This includes an asphalt paving material plant.

The trial court also stated in the findings of fact:

> That the building for the maintenance, repair, and housing and storage of equipment is a logical extension of the use which would include buildings as are reasonably necessary and incident to the operation of the use to which the property is put. The plaintiffs are entitled to a building permit for the shop building.

The majority opinion states that the district court conducted the equivalent of a trial de novo and made its own independent determination of the breadth of the variance. I take that to mean that, in effect, the trial court reheard the variance application and ordered a change in the terms of the variance.

As to the mixing plant, I respectfully disagree with that conclusion. The trial court was asked to interpret the meaning of the language of the 1965 variance and determine whether or not within that language the respondent was entitled to a building permit. To interpret the meaning of the wording of a variance is a proper use of the declaratory judgment action.

Although there are other extraneous words in the findings of fact by the trial court, in effect the trial court found that the

words "ready-mix concrete plant" included an asphalt mixing plant. Concrete may not necessarily mean a paving mixture made with portland cement but may also include asphalt or bituminous concrete. Appeal of H. R. Miller Co., 281 A.2d 364 (Pa. 1971).

Findings of fact of the trial court should not be set aside unless clearly erroneous. NRCP 52(a); McMillan v. Torre, 84 Nev. 556, 445 P.2d 160 (1968). A trial court's construction of an agreement supported by substantial evidence will not be disturbed on appeal. Fox v. First Western Savings, 86 Nev. 469, 470 P.2d 424 (1970). Here the trial court, after hearing the evidence, interpreted the variance language "ready-mix concrete plant" as including an asphalt mixing plant. If there is some evidence in the record to support it, such a finding is not clearly erroneous as a matter of law and the trial court should be upheld.

The shop maintenance building is another matter however. I agree with the majority opinion holding that variances granted from zoning ordinances are to be strictly construed. The variance makes no mention of any shop or maintenance building and if the variance is to be strictly construed, adding the shop and maintenance building goes beyond the specifics of the variance by adding an additional use. Such a finding goes beyond the authority of the court to interpret the words of the variance. Therefore, I join with the majority in reversing the judgment of the lower court in that respect.