RICHARD LAW, Appellant, v. NEVADA GAMING COMMISSION AND THE STATE GAMING CONTROL BOARD, Respondents.

No. 13693

July 3, 1984                                    683 P.2d 1337

*B. Mahlon Brown,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *John A. Godfrey,* Deputy Attorney General, Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from a district court order which denied appellant Richard Law's motion to alter or amend the judgment affirming respondents' administrative decision to terminate Law's employment. For the reasons set forth hereinafter, the judgment is reversed and the case is remanded for the purpose of determining the compensation owed to Law for the official "comp" time which he involuntarily utilized.

Less than one year after joining the audit division of the State Gaming Control Board (Board), Richard Law was promoted to senior agent by Dennis Gomes, the chief of the audit division. As Gomes' chief assistant during the investigation of a massive slot machine skimming operation, Law accumulated remarkable amounts of overtime, which were apparently credited to him as comp time.

The Board established a policy limiting the amount of overtime that officially could be accumulated to 120 hours. After Law reached this limit, however, Gomes directed him to work additional overtime hours. Gomes told Law that these excess overtime hours would represent "unofficial" comp time for which Law could receive equal time off as comp leave. Unofficial comp time, however, was not compensible, even upon termination, and could be taken only as assignments allowed. Gomes' unofficial comp time program was undertaken with the Board's apparent knowledge and acquiescence. The criminal report on the skimming operation was completed after one year's work and delivered to the district attorney. Soon thereafter, Gomes resigned.

George Tsacoyeanes succeeded Gomes and promoted Law to Deputy Audit Division Chief. Tsacoyeanes also appointed Law to direct an expanded administrative investigation of the skimming case. Tsacoyeanes continued the unofficial comp time program instituted by Gomes. The Board was also aware of the Tsacoyeanes' policy. The administrative report was completed after an additional eighteen month's work and was delivered to the Board. Then, Law had accumulated 1450 hours (181 eighthour work days) of unofficial comp time beyond his 120 hours of official comp time.

At that time, Law was also physically and mentally exhausted. Law additionally suffered medical problems which were later diagnosed as a probable case of multiple sclerosis. He looked forward to utilizing some of his unofficial comp time in order to recuperate. During the next five months Law was absent from work forty-seven days and present forty-four

days. Of his forty-seven absences, six were charged to official comp time, fourteen to annual leave and twenty-seven to unofficial comp time.

In January of 1980, Tsacoyeanes resigned. Jeff Kahn was appointed to be the new Audit Division Chief on January 7, 1980. From January 7 until January 28, 1980, Law was present 11½ working days and absent 3½ days, which absences were charged to unofficial comp time. Due to his absenteeism, Kahn advised Law not to take any more unofficial comp time. Law complied. From January 28 to February 15, 1980, Law was present 5½ days and absent 9½ days. One day was charged to official comp time and 8½ days to sick leave. Of the time charged to sick leave, 2½ days were spent undergoing hospital tests.

On February 15, 1980, Kahn sent Law a letter suspending him with pay pending Law's response to Kahn's allegations of excessive absenteeism. Law responded by writing a letter to the Board's chairman. Kahn then sent Law a letter notifying him that the February 15 letter served as a written reprimand pursuant to Nevada Gaming Commission Regulation 2.110(7), that Law's absence that day prevented Kahn's making the required oral notification, that Law would have a meeting with his immediate supervisor pursuant to Regulation 2.110(10) and that he was being placed on official comp time vacation.

After the meeting between Kahn and Law, Kahn recommended to the Board's chairman that Law be dismissed pursuant to Regulation 2.110(8) and sent a copy of the recommendation to Law. Law appealed Kahn's recommendation to the Board's chairman, who granted him a hearing.

The State Gaming Control Board held a hearing for Law. Afterwards, the Board terminated Law, effective May 2, 1980, and ordered that he be paid all benefits, salary and accrued leave up to that date.

Law appealed the Board's decision to the Nevada Gaming Commission, apparently seeking to have the "charges" against him dropped so that he could voluntarily resign. Law did not seek reinstatement, apparently because he intended to resign, effective August of 1980, in order to attend graduate school. Law planned to utilize his accumulated official comp time and annual leave in order to vacation from May until August of 1980. The Commission affirmed the action of the Board.

Law then petitioned for judicial review. The district court found that the Commission's decision was supported by substantial evidence and ordered that Law's petition be denied and the Commission's decision be affirmed. Law then made a motion to alter or amend judgment and to determine separate

findings and conclusions, which the district court denied. Law now appeals that denial.

Law's first contention is that Kahn's failure to initially give oral notification to him of the facts giving rise to disciplinary action violates Commission Regulation 2.110(7), which provides as follows:

> An employee subject to disciplinary action shall be advised by his immediate supervisor of the facts giving rise to such disciplinary action. Such notification shall first orally be made, and thereafter, if the matter has not then been rectified, a written reprimand, specific in detail, shall be given to the employee and a copy placed in the employee's personnel folder; if thereafter the matter is still unresolved, disciplinary action may be taken against the employee as provided for in section 6 of this regulation and the board's personnel manual.

It is undisputed that Kahn knew the requirements of the regulation. Kahn in his February 15 letter even alluded to his duty to provide oral notification and excused his failure to do so because of Law's absence on the afternoon the letter was sent. Kahn also knew that suspension with pay is a disciplinary action, because it involuntarily utilizes the employee's official comp time.

The stated purpose of Regulation 2.110(7) is to provide employees the opportunity to rectify personnel matters before any disciplinary action is instituted by way of formal, written reprimand. One can easily conceive of countless situations when an oral discussion between an employee and his supervisor would clear up an imaginary problem or nip a potential disciplinary matter in the bud. By violating Regulation 2.110(7) here, Kahn and the Board deprived Law of the opportunity to rectify, resolve or explain any possible problems before disciplinary action was taken. This violation, together with our finding that no substantial evidence supports the reasons given for Law's termination, entitles Law to the remedy he seeks, that is, our declaration that the Board wrongfully terminated Law's employment and recovery of the official comp time he involuntarily utilized after his suspension.

As mentioned above, we agree with Law's second contention that the record on appeal does not contain substantial evidence to support the Board's decision to terminate Law's employment. "Substantial evidence," not "any evidence," is the

proper standard for judicial review of the administrative decisions here. NRS 463.080(6), as well as Regulations 2.110(1) and (8) adopted pursuant to that statute, provides that Board employees cannot be disciplined or terminated "except for cause." We have consistently held that review of administrative tribunals' "for cause" terminations requires the substantial evidence standard. McCracken v. Fancy, 98 Nev. 30, 31, 639 P.2d 552, 553 (1982); Lapinski v. City of Reno, 95 Nev. 898, 901, 603 P.2d 1088, 1090 (1979); State *ex rel.* Sweikert v. Briare, 94 Nev. 752, 755-58, 588 P.2d 542, 544-46 (1978); Paulson v. Civil Service Commission of the City of Reno, 90 Nev. 41, 44, 518 P.2d 148, 150 (1974).

Kahn listed three reasons for initiating disciplinary action against Law: (1) abuse of the Board's sick leave policy; (2) abuse of the Board's comp time policy; and (3) excessive absenteeism. The Board and Commission adopted the three grounds in support of Law's termination. We conclude that the record on appeal does not support any of these reasons for terminating Law's employment. The Board and Commission first concluded that Law's absences from January 7 to February 15 constituted an abuse of sick leave policy. Regarding those absences, Law testified that he missed 5 days with the flu, 2½ days due to hospital tests, ½ day resting at home after returning from the hospital and ½ day due to stomach pains from a long-standing illness. Respondents admit that they did not in fact know whether or not Law was actually sick during the days in question. Respondents, moreover, offered no evidence to refute Law's testimony.

Second, the Board and Commission determined that Law's utilization of unofficial comp time during that same six week period constituted an abuse of the Board's comp time policy. It seems clear that the Board acquiesced in the institution of the unofficial comp time program by Gomes and its continuation by Tsacoyeanes. After Kahn's appointment, Law charged 3½ days to unofficial comp time. Thereafter, Kahn notified Law that unofficial comp time would no longer be allowed. Despite having over 1170 hours of unused unofficial comp time, Law complied with Kahn's mandate and took no more unofficial comp time after he received notice of the policy change.

Third, the Board and Commission concluded that Law's twelve absences attributed to sick leave and unofficial comp time in addition to one day's absence charged to official comp time over the thirty work days in question constituted excessive absenteeism. We do not agree that a worker's absences, which are legitimately attributed to existing policies of the Board,

merely because they add up to some "excessive" percentage of possible work days in the Board's opinion, can support that employee's termination for cause. If that were the case, employees who had to undergo major surgery or who even went on vacation would be in danger of losing their jobs. In conclusion, the record does not contain substantial evidence in support of finding that Law was terminated for cause. We hold that the Board and Commission wrongfully terminated Richard Law. The judgment of the district court, therefore, is reversed.

With regard to damages, Law at oral argument waived any right to compensation except for official comp time, and respondents agreed to compensate Law for the official comp time he had accrued as of February 15, 1980, the date he was suspended. Law's counsel also represented that no action for wrongful termination would be pursued by Law in the event this Court ruled in Law's favor on that issue. The case is therefore remanded for determining the amount of official comp time credited to Law at the time of his suspension and entering judgment for Law in conformity therewith.[1]

---

[1]Subsequent to oral argument appellant's counsel petitioned this Court by letter for costs and attorney's fees. Respondent opposed appellant's informal request to the Court. Cause appearing, we decline to grant appellant's request as to attorney's fees.