976 F.2d 738
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Otis Neil TURNER, Jr., Plaintiff/Appellee/Cross-Appellant,
v.
CITY OF RENO, Defendant/Appellant/Cross-Appellee.
 Nos. 91-16063, 91-16120.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 17, 1992.
Decided Sept. 21, 1992.
 
 Before SCHROEDER, WILLIAM A. NORRIS and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Otis Neil Turner, Jr., former Fire Chief for the City of Reno, appeals the district court's grant of summary judgment in favor of the City of Reno against his claims that the City lacked cause to discharge him and violated 42 U.S.C. § 1983 and the terms of his contract in the process.[1]
 
 
 3
 The City of Reno cross appeals the district court's grant of summary judgment in favor of Turner on his claim that the City Manager lacked authority to terminate him and the district court's award of back pay from the date of the City Manager's purported termination till the date of the City Council's effective termination.
 
 
 4
 We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.
 
 ANALYSIS
 I. Standard of Review
 
 5
 We review grants of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989).
 
 II. Complaints Regarding Hearing Process
 
 6
 Turner alleges three complaints regarding the hearing process utilized by the City of Reno.
 
 A. 1988 Sexual Harassment Policy Procedures
 
 7
 Turner claims the City breached his employment contract by applying the 1988 sexual harassment policy procedures, rather than the 1982 sexual harassment policy procedures. Because the 1988 policy was promulgated by the City Manager, rather than the City Council, and because the 1988 policy procedures materially deviated from the 1982 policy procedures, Turner was "robbed ... of the opportunity for the non-adversarial and impartial proceedings contemplated by Reno's 1982 procedure." Turner specifically complains of not being provided promptly with a copy of the sexual harassment complaint; not being allowed to prepare his own written statement; not being afforded an informal non-adversarial fact finding process; failure to use a three member panel for the fact finding; failure to allow him to challenge the choice of the fact finder; the participation of two City attorneys in the fact finding hearing; and the use of a peer review committee.
 
 
 8
 Regardless of the sexual harassment policy in place at the time in question, we find that Turner was not injured by the use of the 1988 policy. The application of either sexual harassment policy was only of borderline importance to the whole termination procedure. Only one of the six charges brought against Turner implicated the sexual harassment policy procedures, and that charge proved to be the least crucial to the termination determination.
 
 
 9
 Moreover, the application of the 1988 policy provided Turner with more procedural safeguards than the 1982 policy would have provided. For example, the 1988 policy gave Turner the right to have an attorney present at all times. Nowhere does Turner show how the use of the 1982 policy would have altered the outcome of the termination determination. He complains of not promptly receiving the complaint; the record shows, however, that he received the complaint three days after he was notified of the charges. The additional peer review committee and adversarial fact-finding hearing (in which he was represented by an attorney and was allowed to provide witnesses and cross-examine the City's witnesses) added to, not detracted from, his rights. The remaining complaints are equally frivolous. Turner does not justify his complaint with the presence of the City's attorneys at the fact-finding hearing. Nor does he explain how the use of a one-person fact finder, rather than a three-member panel, affected the proceedings; and the fact that the fact finder was the University of Nevada Director of Affirmative Action does not taint the proceedings.
 
 
 10
 B. 42 U.S.C. § 1983--Procedural Due Process
 
 
 11
 Turner relies on the same facts to justify his § 1983 claim. As above, we find that this claim does not raise a genuine issue of material fact.
 
 
 12
 A failure to follow internal administrative termination procedures is not a per se due process violation. In Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), the Supreme Court established the minimum due process requirements:
 
 
 13
 The essential requirements of due process ... are notice and opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.
 
 
 14
 Id. at 546 (citations omitted); see also, Matthews v. Harney County, 819 F.2d 889, 892 (9th Cir.1987).
 
 
 15
 Turner had written an oral notice of the charges against him, written notice of each step of the termination process, copies of the findings and reports issued, and three hearings. The hearings included a ten day fact finding hearing, a pre-termination hearing before the City Manager, and the final hearing before the City Council. At all three hearings, Turner was given an opportunity to argue, present evidence, and refute the evidence brought against him.
 
 
 16
 Turner's allegations that the hearing by the City Council was tainted through ex parte contacts between the City Manager and members of the City Council prior to the hearing is meritless. Our review of the record shows that the City Manager did not seek improperly to influence the City Council members. Turner's allegation that the timing of the City Council meeting fails for the same reason. Turner's avowal that "intervening circumstances had drained the process of any element of fairness" is not supported by the record.
 
 C. 42 U.S.C. § 1983--First Amendment
 
 17
 Finally, no genuine issue is raised by Turner's claim that the City Manager's "gag order" prevented him from publicly discussing the termination proceedings, violating his rights under the First Amendment. No "gag order" was issued against Turner. The City Manager, in a memorandum informing Turner of the complaint, merely requested Turner not publicly discuss the pre-termination proceedings. Undoubtedly, the request was issued to protect not only the party filing the complaint against Turner, but to protect Turner himself. More importantly, we can find no instance of Turner being prevented from speaking out on his behalf. He was represented by counsel throughout the proceedings, and his counsel spoke out on his behalf at each stage.
 
 III. Legal Cause for Termination
 
 18
 We should uphold Reno's termination decision if we find that "substantial evidence [was] placed before the City Council from which it could have made a finding that legal cause existed to terminate" Turner. See Lapinski v. City of Reno, 603 P.2d 1088, 1090 (Nev.1979). In making our determination, we are limited to the record before the City Council, id., which includes the record created during the two prior hearings.
 
 
 19
 The Nevada Supreme Court has determined "cause" to be:
 
 
 20
 ... legal cause, and not any cause which the officer authorized to make such removal may deem sufficient. It is implied that an officer cannot be removed at the mere will of the official vested with the power of removal, or without any cause. The cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of his duties, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power and equivalent to an arbitrary removal.
 
 
 21
 Lapinski, 603 P.2d at 1090 (quoting Whalen v. Welliver, 104 P.2d 188, 190-91 (Nev.1940)); see Rust v. Clark County School District, 683 P.2d 23, 25 (1984).
 
 The six charges against Turner include:
 
 22
 [Turner] inappropriately gave assurances to and promised the complainant [Ward] a job in contravention of civil service rules, regulations and established merit system principles;
 
 
 23
 ... orchestrated and participated in an illegal real estate transaction;
 
 
 24
 ... applied pressure which was inappropriate under the circumstances [to secure the sale of real property];
 
 
 25
 ... illegally acted in the capacity of a real estate broker or salesman;
 
 
 26
 ... furnished to the complainant [Ward] an advance copy of the oral examination questions and rating standards for the purpose of influencing the outcome of the examination process in violation of civil service rules, regulations and established merit system principles;
 
 
 27
 ... requested sexual favors from the complainant which, under the attendant circumstances, constitutes a violation of the city's harassment policy.
 
 
 28
 Each one of the above charges brought against Turner, if supported by substantial evidence, provides ample ground for dismissal. Each allegation is central to the fitness for the office of Fire Chief for the City of Reno. As stated by the district court, "[i]n view of the fire chief/applicant relationship between him and Ms. Ward, Otis Turner had no business developing any kind of relationship with her, whether business or personal."
 
 
 29
 We need focus only on the four charges found substantiated by the district court.[2]
 
 
 30
 We find that at least three charges were supported by substantial evidence. The first charge is the least supported. Ward testified, on three separate occasions, concerning Turner's alleged assurances to and promises that he could influence her ability to gain a fire fighter position. Her mother testified that Ward told her she definitely would get the position; an attorney Ward consulted and her ex-husband testified that she told them that Turner had promised her the job. Turner admits he discussed her chances with her and that he could have told her her applicant number, but denies telling her he could get her hired despite the fact that her number did not make the hiring cut-off point. The evidence substantiates the fact that Turner engaged in inappropriate discussions with Ward, but it does not substantiate that he actually promised her a fire fighter position.
 
 
 31
 The second and third charges are well substantiated in the record. Documents evidence Turner's heavy involvement in the real estate transaction. It is undisputed that Turner selected the appraiser, paid for the services, advertised the property in the newspaper with his phone number, showed the property, selected the lending company and met with the representative, and chose the title company and escrow officer (a friend of his). Moreover, Turner lent Ward $13,000 to facilitate the real estate transaction, he also participated (if not incited) her representation to the mortgage company that the money was a gift from her parents. Ward also testified, and Turner did not deny, that Turner repeatedly convinced Ward to go forward with the purchase when she expressed concern as to her financial capabilities.
 
 
 32
 The fifth charge is substantiated not only by the testimony of Ward that Turner gave her a copy of the oral examination questions, but her production of the document. A fingerprint expert found nine of Turner's fingerprints on it. Turner admitted making twelve photocopies of the document for distribution at a meeting, suggesting that one of these persons could have distributed the document. The persons present at the meeting, however, testified that they never gave their copies to any candidate.
 
 
 33
 We find that there is no genuine issue of material fact relating to the City Council's evidential support for its finding that it had cause to discharge Turner.
 
 IV. Termination Authority
 
 34
 The City of Reno appeals the district court's finding that the City Manager lacked the authority to discharge the Fire Chief. The court found that, as an appointed department head, Turner could only be discharged by the City Council.
 
 
 35
 We agree. Section 3.010(5) provides, in part:
 
 
 36
 The city manager shall appoint all officers and employees of the city and may remove for cause any officer or employee of the city except as may otherwise by provided for in this charter. The city manager may authorize the head of a department or office to appoint or remove his subordinates. The appointment of a head of a department or office by the city manager does not take effect until it has been confirmed by a majority vote of the members of the city council; and if a person so nominated is not confirmed, the city manager shall continue to submit nominations until a nominee is confirmed. The city council, may, by a majority vote of all members elected, remove for cause any head of a department or office.
 
 
 37
 (emphasis added). The City Charter is clear. The City Manager may remove officers and employees, while the City Council may remove for cause any head of a department or office. The Fire Chief is the head of the Fire Department, and as such only may be removed by the City Council. Nothing in this section or in the rest of the Charter suggests that the removal of heads of departments or offices is concurrently shared by the City Council and City Manager.
 
 
 38
 The case law cited by the City does not involve charters similar to Reno's. In any event, we do not need to resort to outside sources to determine the intent of the Reno Charter; the Charter is clear. Roberts v. State of Nevada, 752 P.2d 221 (Nev.1988) (when a statute is clear and unambiguous on its face, a court may not go beyond the language of the statute in determining legislative intent).
 
 V. Back Pay and Benefits
 
 39
 Because the district court found Turner had not been properly terminated until the City Council ordered his dismissal on February 6, 1990, the court awarded Turner lost wages and benefits from June 8, 1989, the date the City Manager attempted removal, to February 6, 1990.
 
 
 40
 Reno argues that because the City Council ratified the City Manager's attempted termination of Turner and made the termination retroactive to June 8, 1989, the district court's award to Turner amounts to unjustified windfall. Reno relies on Carey v. Piphus, 435 U.S. 247 (1978). That case, however, dealt with remedies for procedural due process violations; the case at hand involves remedies for a breach of contract. Nevada law provides for compensatory damages in the form of back pay for breach of a contract of employment. See, e.g., K Mart Corp. v. Ponsock, 732 P.2d 1364, 1368 (Nev.1987).
 
 
 41
 Reno also argues that Turner is not due any compensation because the City Council retroactively ratified the City Manager's wrongful termination of Turner. The cases it cites, however, are inapposite. They do not stand for the proposition that the ratification by a municipal government of an officer's unauthorized actions effectively eradicates an intervening claim for breach of contract. Turner was due wages until proper termination; the City Council's ratification of the City Manager's wrongful termination did not abrogate Turner's rights to the wages lost between June 8, 1989, and February 6, 1990. See Hennum v. City of Medina, 402 N.W.2d 327, 334 (N.D.1987).
 
 CONCLUSION
 
 42
 The district court's order granting summary judgment is affirmed.
 
 AFFIRMED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 Turner has not appealed the district court's grant of summary judgment against his claims of bad faith discharge and intentional infliction of emotional distress
 
 
 [2]
 It is unclear whether the district court found the evidence substantiated the claim that Turner requested sexual favors from Ward. Although the court found "no need" to prove the harassment claim because the other charges were sufficiently egregious to warrant termination, it did discuss the evidence. In light of our finding that the other charges were substantiated, we will not address the evidence in support of the harassment claim