STATE OF NEVADA, Ex Rel. WILLIAM D. WHALEN, Relator, v. A. M. WELLIVER, as Chief of Police of the City of Reno, Et Al.

STATE OF NEVADA, Ex Rel. CHESTER BOWLIN, Relator, v. SAME.

Nos. 3314, 3315

June 27, 1940.                    104 P. (2d) 188.

*Bowen & Custer,* for Relators.

*Douglas A. Busey,* City Attorney, for Respondents.

## OPINION

By the Court, ORR, J.:

Petitioners seek a writ of mandate to compel respondents to reinstate them as police officers of the city of Reno, State of Nevada.

Petitioner Bowlin was appointed an officer of the city of Reno police department, by the chief of police thereof, in December 1936, and was confirmed as such officer by the city council of the city of Reno in November 1937. Petitioner Whalen was appointed an officer of the city of Reno police department by the chief of police thereof in March 1938, and was confirmed by the city council of the city of Reno in November 1938. On the 20th of March 1939, the legislature of the State of Nevada passed a civil service law for the police and fire departments of the city of Reno (Stats. 1939, p. 99, c. 95). Pursuant to the provisions of said act, the city council of said city of Reno appointed members of the civil service commission on June 1, 1939, which said commission organized and held the first examinations under the act

on August 28, 1939. All the persons who were then police officers of the city of Reno, including petitioners, took the said examination. On the 25th day of September 1939 the commission designated to the chief of police a list of persons who were then police officers of the city of Reno, which designation included the petitioners, who were eligible for the appointment as police officers of the Reno police department, and also a list of other applicants who had passed the examination and who were eligible to appointment as said police officers.

On the 30th day of September 1939 the city council and chief of police of the city of Reno entered an order which purported to summarily discharge all police officers of the city of Reno, thirty-six in number, the petitioners being included in the said order. Immediately thereafter the chief of police appointed as police officers for said city thirty-one of the thirty-six persons discharged as aforesaid. The remaining five appointments were made from the list of other applicants furnished by the commission. Said appointments were confirmed by the city council. The petitioners were not appointed as police officers under said order, and, of course, were not confirmed.

In March 1940 petitioners requested and secured a hearing before the commission. On April 18, 1940, the commission entered an order that petitioners be reinstated as police officers of the said city of Reno, and pursuant to said order the chief of police assigned petitioners to duty as patrolmen on the Reno police department, and petitioners acted as such from April 19 to April 29, 1940. On the date last mentioned petitioners received notice from the chief of police not to thereafter report for duty, as the city council considered them discharged from the Reno police department as of September 30, 1939. Again, on May 9, 1940, after a hearing, the commission ordered the reinstatement of petitioners, but the chief of police, acting under orders from the Reno city council, refused to assign either of them to duty.

Respondents make two defenses to the petitions: First, that petitioners are not now and never have been police officers of the city of Reno under the civil service law; second, if the civil service law is applicable to petitioners it is unconstitutional insofar as it purports to prevent their discharge without a hearing before the commission.

In substance, the contentions of respondents are that while the Reno civil service law did not have the effect of removing from office those officers who were serving at the time of its enactment, its protective terms relative to the methods of removal did not apply to the then serving officers, but have application only to officers appointed under its provisions, and that therefore the then serving officers could only be removed by the chief of police and city council under section 2 of article IX of the charter of the city of Reno. Further, that if it be determined that the protective provisions of the Reno civil service law applied to the officers serving at the time of its enactment, then section 2, which makes provision for the filling of vacancies, is unconstitutional, in that it establishes no term of office. Section 2 of the civil service law reads as follows: "Whenever a vacancy in either the police or fire department of said city exists, a request shall be made of the commission by the chief of the respective department for the designation of suitable appointees. The commission shall designate suitable appointees within three days after receiving any request. If satisfactory the appointment of a suggested individual shall be made and confirmed by the council. If the suggested appointees fail of appointment and confirmation, the commission shall suggest individuals until the council does confirm."

■ Our consideration of the petitions leads to the conclusion that even though the position of respondents relative to the defensive matters hereinbefore stated is correct, yet the writ should issue for the reason that the order of the chief of police and city council of September 30, 1939, purporting to discharge the petitioners,

is void because it violates the provisions of section 2 of article IX of the charter of the city of Reno, which was the law operating at the time petitioners were appointed, and which said law the civil service law was intended to supersede. Said section reads as follows: "The chief of police shall have command and control of the police force of the city, and may suspend any police officer for cause pending investigation by the city council. At the first meeting subsequent to such suspension the chief of police shall report said suspension. If the city council by a majority vote of members elected approve the suspension the police officer shall be thereby dismissed. If such suspension is not approved by such vote the suspension is thereby revoked. He shall be vigilant in the detection of crimes and the speedy apprehension of all criminals and offenders, and shall diligently see that all ordinances of the city of a police nature, the general laws and the provisions of this charter, are rigidly enforced and observed." Statutes of 1937, p. 427.

██ It will be noted that the section empowers the chief of police to suspend an officer for cause, and if after investigation by the city council the suspension is approved by said council, then such approval acts as a dismissal. The facts surrounding the order of dismissal entered by the council on September 30, 1939, disclose that the council, being of the opinion that the civil service act applied only to those appointed under its provisions, and being desirous of having said civil service act go into operation without the long delay which would have been necessitated had they waited until vacancies occurred and were filled in the ordinary course in events, dismissed all of the then serving members of the police department and reappointed all of them except petitioners and three others. This suspension was summarily made as a matter of convenience in getting the civil service act in operation, and while the motive which actuated the council at the time is commendable, it was in violation of law, no matter what view is taken as to which statute was in operation. As has been said, it

was clearly not in accordance with section 2 of the civil service act, and it is just as clearly not in accordance with the provisions of section 2 of article IX of the charter of the city of Reno. Under the provisions of said section of the charter, removal must be for cause, and the word "cause" as used therein means legal cause, and not any cause which the council may have deemed sufficient. A good definition of the word "cause" as used in statutes and ordinances similar to the one in question is found in the case of Sausbier v. Wheeler, 252 App. Div. 267, 299 N. Y. S. 466, at page 472: " 'Cause' or 'sufficient cause' means legal cause, and not any cause which the officer authorized to make such removal may deem sufficient. It is implied that an officer cannot be removed at the mere will of the official vested with the power of removal, or without any cause. The cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of his duties, showing that he is not a fit or proper person to hold the office. An attempt to remove an officer for any cause not affecting his competency or fitness would be an excess of power and equivalent to an arbitrary removal."

Words and Phrases cites many more cases which define the word in a similar manner. Therefore the order of September 30, 1939, purporting to dismiss petitioners from the police force was a summary and arbitrary one, in excess of the rights granted to the chief of police and city council by either the civil service law or the provisions of the Reno charter hereinbefore set out.

The view we have taken as to the validity of the purported order of September 30, 1939, renders unnecessary a determination of the constitutionality of section 2 of the Reno civil service law, and also renders unnecessary a determination as to whether the provisions of the civil service law apply to the officers serving at the

time of its enactment, or only to those appointed under its provisions.

It is ordered that the chief of police and city council of the city of Reno permit petitioners, and each of them, to assume the positions in the Reno police department held by them on the 30th day of September.

## On Petition for Rehearing

August 28, 1940. 104 P. (2d) 1016.

*Bowen & Custer*, for Relators.

*Douglas A. Busey*, City Attorney, for Respondents.

## O P I N I O N

By the Court, ORR, J.:

In presenting this petition, respondents urge that by our decision we in effect overruled a former decision of this court, viz, Leeper v. Jamison, 32 Nev. 327, 108 P. 1.

At the time of rendering the decision we were familiar with that case, it having been cited by respondents in support of their contention that certain sections of the Reno civil service law are unconstitutional.

Counsel for respondents in his brief in the main case called attention to the fact that prior to the enactment of the civil service law, sections 1 and 2 of article IX of the charter of the city of Reno governed the appointment and removal of police officers. Petitioners raised

the question of the legality of the dismissal under said sections. It was apparent that should respondents prevail in their contention as to the unconstitutionality of certain sections of the civil service law we would be confronted with a determination of the legality of the dismissal under the said sections of the charter, and it appearing that the dismissal under the terms of the charter was illegal, respondents could gain nothing by a decision on the constitutionality of the civil service law.

The situation resolved itself into this: First, if we should find the civil service law constitutional, then the writ should issue, because its terms were not complied with; second, if we should find the Reno civil service law unconstitutional, then, again, the writ should issue because the discharge was not in conformity with the provisions of the Reno charter. And, following the well-established rule that courts will not pass upon the constitutionality of a statute unless absolutely necessary, we declined to do so.

We think it will be conceded that before we would be justified in considering the controlling effect of the case of Leeper v. Jamison, supra, the question of the constitutionality of sections 1 and 2 of article IX should have been challenged and presented for consideration. This was not done. We did not feel justified in going outside the issues presented in order to bring that question into the case. We will be disposed to give such force and effect to the Leeper case as we then think proper if and when a question is presented to us, necessary to be determined, involving the principles therein decided. We most certainly have not, as yet, overruled that case.

Another well-recognized rule is that questions presented for the first time on petition for rehearing will not be decided.

Rehearing denied.