Since 1975, Dee Peseau had served as Chief Clerk in the Tuscaloosa County Probate Office. She was an employee of Tuscaloosa County with all of the rights and privileges accorded by Act 357, Acts of Alabama, Regular Session, 1949, which act established a civil service system for employees of Tuscaloosa County, Alabama.
A new probate judge, Hardy McCollum, was elected in Tuscaloosa County in November 1976 and installed in office on January 16, 1977. Judge McCollum dismissed Ms. Peseau in writing from her employment on May 18, 1977. Peseau appealed her dismissal to the Tuscaloosa County Civil Service Board under § 10 of Act No. 357.
A public hearing of her appeal was held by the Board as provided by the Act. Testimony was heard over several days. The transcript of the record is over 900 pages in length. The Board found Peseau guilty of two of the charges made against her. It refused to uphold her dismissal from employment, but instead ordered her demoted from chief clerk to clerk.
Peseau appealed the order of the Board to circuit court as provided by the act. The order of the Board was there affirmed. Peseau has appealed the order of the circuit court to this court for review as further provided by § 11 of the Act.
Section 10 of Act 357 provides that after dismissal of an employee subject to the Act, and an appeal to the Board, the Board shall order charges to be filed in writing and shall hold a de novo hearing on such charges. It also provides that no permanent employee shall be discharged or demoted except for cause.
We do not find in the record the written charges filed for hearing; however, the finding of the Board contains a listing of them. They are stated to be: "(a) difficulty in dealing with the public, (b) difficulty in dealing with co-workers, (c) failure to respect the office of Probate Judge of Tuscaloosa County, (d) loyalty to the retired probate judge." The Board found no evidence to support charge (a) and stated it did not consider charge (d). The Board related specific findings of fact which it stated supported charges (b) and (c). We will refer to those subsequently.
The Act provides the standard for review of the decision of the Board by the circuit court. It provides in § 11 that, *Page 1312 
 [T]he court shall affirm the decision of the Board unless it finds that the substantial rights of the petitioner have been prejudiced because the final decision of the Board was: (1) unsupported by substantial evidence in the record submitted; (2) in excess of the authority conferred by this Act on the Board; (3) violative of constitutional provisions; (4) arbitrary or capricious; or (5) affected otherwise by substantial error or injustice.
In consonance with those standards, Peseau contended before the circuit court and here that, (1) there was no substantial evidence to support the removal or demotion of Peseau from her permanent classification of employment; (2) Peseau was denied due process; (3) the decision of the Board was otherwise affected by substantial error or injustice.
We will examine first the issue of absence of substantial evidence.
Our supreme court has accepted as a definition of "substantial evidence" the following: "[S]ubstantial evidence is more than a scintilla and must do more than create a suspicion of the existence of a fact to be established. * * * `"It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'" Ex parte Morris,263 Ala. 664, 83 So.2d 717 (1955).
Act 357, § 11 provides that no permanent employee may be removed or demoted except for "cause." "Cause" when used in such context has been termed variously as follows: "The phrase `for cause' . . . means reasons which the law and sound public policy recognize as sufficient warrant for removal, that is, legal cause, and not merely cause which the appointing power in the exercise of discretion may deem sufficient." State ex rel.Doherty v. Finnegan, 206 A.2d 477, 25 Conn. Sup. 390 (1964).
 "Cause" . . . means legal cause, and not any cause which the officer authorized to make such removal may deem sufficient. . . . The cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of his duties, showing that he is not a fit or proper person to hold the office. State ex rel. Whalen v. Welliver, 104 P.2d 188, 60 Nev. 154 (1940).
We conclude that the terms "substantial evidence" and "cause" contained in the Act must be considered and applied together. The charges upon which an employee is discharged or demoted from civil service must constitute "cause," as that term is construed, and must be supported at a hearing before the Board by "substantial evidence." Act 357, Acts of Alabama, Regular Session, 1949.
The Board set out in detail its findings of fact and conclusions. It first found no evidence to support the charge of "difficulty in dealing with the public." It next listed the second charge of "difficulty in dealing with co-workers." It did not specifically find Peseau guilty of this charge but said as follows:
 (1) The Board finds that testimony by both the Department Head and Mrs. Peseau showed a lack of communication, a lack of trust and a situation that we feel could not continue and the Probate Office serve the people.
 (2) Testimony by Mrs. Peseau that the co-workers were divided, that she was in support of some employees and did not trust some others. This resulted in note passing by one side and going through trash cans after hours and taping notes together and giving to Chief Clerk on the other. It is hard for this Board to understand the action of both parties.
 (3) The failure of the Chief Clerk to tell the Department Head where she obtained the notes, according to her testimony, when he requested it. (R. 5).
The findings (1) and (2) are made jointly as to Peseau and other employees including the probate judge. These findings represent a condition of the office not a finding *Page 1313 
of fault against Ms. Peseau. The finding that unpleasant personal differences existed in the office among the employees is supported by the evidence. However, there is not substantial evidence that Ms. Peseau was responsible for the condition. We have carefully read all 936 pages of the record and find the evidence substantially to the contrary. The evidence discloses that Ms. Peseau was promoted to the position of chief clerk by the former probate judge in 1975, despite the recommendation of another employee by the Civil Service Board. The judge who appointed her was defeated by Judge McCollum. Judge McCollum believed Ms. Peseau supported the incumbent judge. He knew that they were close friends and that the friendship continued after the election. Other employees had supported Judge McCollum. Immediately upon assuming office, Judge McCollum removed from Peseau the duties of personnel supervision which had previously been assigned to her as chief clerk. He removed her from the duty of assisting the judge in commitment hearings. He directed the other employees to report directly to him and informed them that they were no longer to be subject to checks by Ms. Peseau as to their work or in their work schedule. The only prerogatives left to her as chief clerk were those granted to her by statute. § 12-13-14, Code of Alabama (1975).
From the first day of Judge McCollum's entry in office, certain other employees began to write notes to one another which were derogatory to Ms. Peseau and an employee supportive of her and which indicated knowledge that she was going to be removed by the judge from the position of chief clerk and assigned to the record room.
Other employees collected some of such notes from the trash and gave them to Peseau. As a result of knowledge of the notes, Peseau began to secure statements from attorneys as to her competency. Within a few days after Judge McCollum took office, Ms. Peseau informed him by letter of her desire to work with him and requested that he define her duties and responsibilities. He never responded.
The third finding of the Board under charge (b) assesses fault to Peseau for refusing the demand of Judge McCollum to inform him where she obtained the notes written about her by other employees. Peseau did not disclose her knowledge of the notes to either the authors or to Judge McCollum until a meeting on March 22. The principal author was present at the meeting and the judge was aware of her authorship. It is not clear why he asked to know how she got them, but it appears he was more concerned about that than who wrote and passed them and why. The record indicates that he considered the whole matter no more serious than to term it "childish." We are unable to determine how this incident supports the charge of difficulty of dealing with her co-workers, particularly when she did not originate or participate in the writing and passing of notes. The refusal to disclose who found them and gave them to her was not unreasonable under the circumstances. We find no substantial evidence of cause for discipline under charge (b).
The Board also made specific findings in support of the charge of "failure to respect the office of probate judge." It first stated (1) "Testimony by Ms. Peseau that she believed Judge McCollum was going to transfer or terminate her and the fact of going through trash cans and documenting notes from the first day he was in office. In fact it was four months after taking office that any action was taken."
We are unable to determine how such action displays failure to respect the office. It appears reasonable that an employee who had heard that she was to be removed from her position and who had been stripped of the ordinary powers of her job by an incumbent who knew her to be a friend and supporter of his political opponent, should make some effort to protect herself from dismissal. To do so is no evidence of failure to respect the office. The reference to going through trash cans does not apply to Peseau. There was no evidence that she did so or that she requested others to do so. *Page 1314 
The next findings are, "(2) failure to talk to department head about her feelings and problems and admitted failure to try and gain an audience with him," and "(3) failure to inform Civil Service Board about her problems if no relief was given by department head."
Reason (2) placed a burden upon the employee to carry complaints and express her feelings of insecurity to a department head who had (a) just stripped her of the responsibility of her position by telling other employees she had no further authority over them and (b) had failed to respond to her offer to conform to his policies and (c) had failed to respond to her request to define the duties which he desired her to perform. The testimony was that Peseau and the judge were in daily contact in the office. It would appear that the next administrative duty was his. Finding (3) places upon the employee a burden of complaining to the Board of actions of her department head who had the authority to discipline her. There is no power given the Civil Service Board by the Act to hear, much less act upon such a complaint. The Board does not supervise administration of county offices.
Finding (4) of the Board refers to a meeting of the judge and Peseau after he had already told her she was dismissed. The meeting involved negotiation of a possible transfer and demotion in lieu of being dismissed outright. It charges that in such negotiation, Peseau attempted to involve the transfer of another employee as a condition of her acceptance. Such action supplies no reasonable support of the charge of failure to respect the office.
Finding (5) charges Peseau with misplacing personnel records relating to vacation and sick leave of employees in the office. There was evidence that Peseau had formerly kept such records but stopped doing so when Judge McCollum told the employees to come to him with such requests. As a result she no longer had knowledge from which to keep the records. It was also shown that there was no requirement that such records be kept. They were not official records. Her testimony was that she may have thrown them out when she cleared her desk. She was not directed to give them to anyone else when her responsibility for personnel was removed. At best, the evidence would perhaps support negligence, not failure to respect the office.
Finding (6) charges Peseau with leaving a meeting with Judge McCollum without his permission or the ending of the meeting. This finding arises from evidence that because of a reported public disagreement between Peseau and another employee during office hours when Judge McCollum was out of the country, the judge asked the two to meet with him after the office closed at 5:00 P.M. It was undisputed that after some 45 minutes of discussion which apparently became argumentative and recriminatory, Peseau told the judge that her husband was waiting for her to go home and cook supper. She therefore left. As we view the evidence, this action, though perhaps impolite if construed most strongly against her, does not rise to the stature of disrespect of the office of probate judge.
To summarize, we find the reasons or finding of fact of the Board given to sustain the determination of guilt as to charges (b) and (c) do not satisfy the definition of substantial evidence and neither do they meet the standard of "cause" for the demotion and transfer of Ms. Peseau. This is most stridently evident when every witness including Judge McCollum testified that Ms. Peseau was a very competent and capable chief clerk and never failed to ably perform her duties in the office up to the day of her dismissal. The fact of her competence measured by integrity, efficiency and knowledge of her duties is found as fact and expressed in the decision of the Board. The decision of the Board further contains reference to what it feels the relationship should be between a probate judge and the chief clerk. It likens it to that of marital or law partners — one of complete confidence and trust. The decision states that the testimony indicates an absence of such a relationship between Peseau and the judge. It concludes therefore, that necessity requires removal of Ms. Peseau from her *Page 1315 
position. We believe it implicit in the decision that the existence of the lack of trust between Ms. Peseau and Judge McCollum and not necessarily its cause, necessitated the removal and demotion of Ms. Peseau. We agree that such condition is not conducive to a pleasant work environment and is perhaps detrimental to efficiency. However, we find that to be insufficient and erroneous when viewed in light of the Civil Service Act. To remove an employee because of absence of a relationship of complete trust and confidence between the employee and the department head, without substantial evidence that the employee is responsible, is to nullify the Act.
The second issue is whether there was lack of due process in the proceedings.
It is well settled that an employee who has established the right to permanent employment pursuant to a civil service statute such as Act 357, has a "property right" in his job which may not be taken away or altered without due process of law. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694,33 L.Ed.2d 570 (1972); Board of Regents of State Colleges v. Roth,408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
We have previously pointed out that one of the bases of review of the decision of the Board by the circuit court is whether it is violative of constitutional provisions. Peseau contends, among other reasons, that her right to procedural due process was violated by the vague, uncertain and indefinite charges brought against her. The mandate of the due process clause is that one may not be deprived of property without the rudimentary elements of fair play, that is, reasonable notice of and precise description of the nature and substance of the charges and reasonable opportunity to present a defense. An examination of the charges previously set out herein exhibits their vagueness and uncertainty. They furnish no clue as to the specific acts which precipitated the conclusions contained therein and do not conform to necessary due process. Perry v.Sindermann, supra; Board of Regents of State Colleges v. Roth,supra; Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187,14 L.Ed.2d 62 (1965); Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970); County Board of Education of Clarke County v. Oliver,270 Ala. 107, 116 So.2d 566 (1959); State Tenure Commission v.Pike County Board of Education, 349 So.2d 1173 (Ala.Civ.App. 1977).
We finally must conclude that the Board acted arbitrarily and capriciously or otherwise committed substantial error or injustice in denying to Peseau the right to offer evidence that the charges were brought against her for personal or political reasons of the department head.
Section 17 of Act 357 specifically forbids dismissal of an employee from any position because of his political opinions or affiliations. The chairman of the Board repeatedly forbade introduction of testimony concerning the "politics of the parties or anything relating to events occurring before the entry of Judge McCollum into office." It is our opinion that Peseau should have been allowed to show the political affiliation and opinions of the parties insofar as it could reasonably be inferred to affect their relationships and the bringing of charges against her.
For all of the error herein noted, the judgment of the circuit court must be set aside, and the matter is remanded to that court for disposition not contrary to this decision.
REVERSED AND REMANDED.
BRADLEY, J., concurs.
HOLMES, J., concurs in the result. *Page 1316