What due process rights does a nontenured public school teacher have in case his contract is nonrenewed? That is the sole question presented by this appeal.
Richard A. Abston, a public school teacher and head football coach at Pickens County High School, filed an action in the Circuit Court of Pickens County, in which he claimed that he was nonrenewed "because he complained about deficits in gate receipts at home football games played by Pickens County High School," which ultimately culminated in the resignation of the school principal, James Lawrence, who was responsible for the handling of the gate receipts. Abston charged in his complaint that "[o]ne of Lawrence's last acts, prior to his resignation, was to recommend to the Pickens County School Board that plaintiff not be rehired for the 1979-80 school year."
Some of the basic operative facts are as follows:
In 1976, Abston left his tenured position with the Opelika City School System at the invitation of Pickens County Board of Education to become head football coach and athletic director at Pickens County High School. During Abston's first season, the Pickens County football team had a 9-0-1 record and went to the state playoffs. In his second season, the football team had a 6-4 record, and in his third year, the team went 7-3, and again made the state playoffs. Abston was recognized as West Alabama 2-A Coach of the Year for all three years he was employed in the Pickens County School System.
In addition to his coaching duties, Abston taught five physical education classes per school day, maintained the school gym, and also maintained the football field and playground area.
When Abston first arrived at Pickens County High School, he was faced with a debt of $7,000 in the Athletic Department. Upon investigation, he learned that the gate receipts from the football games seemed to be lower than the size of the crowd would have indicated. Abston discussed this situation with a group called the Pickens County Athletic Club, and a procedure was established for counting the number of people attending home games. This *Page 239 
was done for the Aliceville game in 1976, and all home games in 1977. In 1976, and 1977, the principal of the high school, Lawrence, was in charge of the gate receipts from Friday night until the following Monday morning. When Abston would receive the money on Monday morning from the principal, he would make a report to members of the Athletic Club so they could correlate their numbers. It was estimated that for each game counted in 1977, the receipts appeared to be $250.00 to $1,000.00 short. The Pickens County Board of Education, through the superintendent, made several changes in the manner in which football tickets were handled and accounted for after the 1977 football season.
In March of 1979, a group of citizens formed an organization known as "Concerned Citizens of Reform School District" to discuss with the school board rumors that Abston would not be renewed as head football coach. One of the purposes of the group was to protect Abston's job so as to insure the success of a fund raising project to provide better lights for the football field. The "Concerned Citizens" also asked to have principal Lawrence fired.
There was some evidence that shortly before the "Concerned Citizens" formed, Abston was informed by the defendant Boyd Edgeworth, a school board member, that "[t]he only reason he could figure [for nonrenewal of Abston] was because he (Lawrence) could get his hands back in."
On March 19, 1979, the "Concerned Citizens" met with the school board and asked whether or not Lawrence would be fired and whether Abston would be rehired. The group was given no answer. In mid-April of 1979, the "Concerned Citizens" submitted a report to the board concerning principal Lawrence and reasons why he should be terminated. One of the affidavits attached to the many statements, figures, etc. was one signed by Abston, which was executed for the purpose of showing that Lawrence was not properly doing his job as principal. Again the "Concerned Citizens" asked that Lawrence be fired.
The March and April meetings were widely reported by local and state news media and the contents of the "Concerned Citizens" report were widely known in the rural area of Pickens County. Shortly thereafter, on May 10, 1979, principal Lawrence recommended to the superintendent of the Pickens County School Board that Abston be written a letter of nonrenewal for the 1979-1980 school year. The superintendent accepted the recommendation of principal Lawrence, and without further investigation, recommended to the school board that Abston's contract not be renewed. The school board accepted the recommendation without any discussion or inquiry whatsoever. The superintendent could not state that Lawrence's act was not an act of retaliation against Abston for his activities. On May 24, 1979, one day prior to the end of the school year, Abston was notified in writing that his contract would not be renewed. Immediately thereafter, Lawrence submitted his resignation as principal, effective July 1, 1979.
The trial judge found that the board, following the recommendation of the superintendent, who, in turn, had followed the recommendation of principal Lawrence, had "adhered to the statutory requirements regarding notice. . . ." On the substantive due process claim, the judge opined that Abston, as a nontenured teacher, had no constitutionally protectable property interest in his job in that he had no reasonable expectation of reemployment for the following school year. The trial judge cited this Court's case of Underwood v. BarbourCounty Board of Education, 372 So.2d 22 (Ala. 1979). The trial judge then opined:
 Abston alleges that his complaints about deficits in gate receipts at home football games led to his being not rehired. Ordinarily, a non-tenured teacher, such as Abston, is not entitled to any due process hearing unless he or she is stigmatized or suffers injury to his or her prospective future employment, Foster v. Blunt [sic] County Board of Education, 340 So.2d 751
([Ala.]1976); Gowen v. Cherokee County Board of Education, 348 So.2d 441 ([Ala.]1977). No complaint is made here *Page 240 
of such injury to Abston or his professional standing. What is complained of by Abston is that his constitutional rights of freedom of speech were infringed. In this instance, the complaint is directed to Abston's immediate principal, Jimmy Lawrence, who it is alleged recommended his non-renewal, which recommendation once removed, was accepted by the Board.
 It is well recognized that a teacher, tenured or not, cannot be discharged or not re-employed, for exercising his or her constitutionally protected rights of free speech, Mount Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). It is additionally recognized that at a hearing to determine the truth and accuracy of such an allegation, the burden is on the non-tenured teacher to establish that his speech was protected and that this same speech was a "substantial" or "motivating" factor in the Board's decision not to rehire, Mount Healthy City Board of Education, supra. . . .
 In this case, Abston has attempted to meet this burden by showing he supplied information to the Pickens County High School Athletic Club back in 1976, which was during his first year as coach and teacher in the system. The information supplied by Abston was of the amount of gate receipts reported by the principal for the home football games of the team for that year. With this information, the Athletic Club then apparently compared the account of those in attendance at these games with the reported receipts to show the principal's defalcation. No evidence has been offered by the Plaintiff to show that the entire matter of gate receipts was ever brought to the attention of Lawrence or that Lawrence knew or had knowledge of Abston's participation in this scheme to catch him (Lawrence) pocketing gate receipts. In fact, the Court recalls Abston testifying that he never talked to Lawrence about this matter. The Plaintiff's own testimony further shows that he had not been active in the effort to get rid of Lawrence as principal and that according to his affidavit given under date of April 6, 1979, he in part states, "I have taken no part in the recent activities or controversies surrounding Mr. Lawrence." The Court simply declines to draw the inference suggested by the Plaintiff that Lawrence knew of Abston's participation and, therefore, got rid of him as a result.
 The Superintendent recommended the nonrenewal of Abston's contract to the Board without reason and the Board accepted his recommendation without reasons being stated. This is verified by the minutes of the May 21, 1979, Board meeting at which personnel decisions affecting the entire system were made. Perhaps more enlightening to the Court was the fact that the school trustees had met on three (3) occasions during Abston's last year, 1978-79, and that on the occasion of the second meeting, Lawrence informed them of his decision to recommend the nonrenewal of Abston's contract. (See § 16-10-1
et seq. 1975 Code of Alabama.) It is clear that at least as early as this meeting, the trustees were in agreement with Lawrence that Abston's contract not be renewed. It is also clear that this meeting occurred before any of the public criticism and efforts to get rid of Lawrence had surfaced.
 The Court having found that Abston has failed to meet his burden of proof, it would be unnecessary to inquire into the reasons for the Board's action in not renewing his contract. For the Court to do otherwise would call for it to merely speculate as to whether the action of Lawrence, through the Board, was in retaliation for Abston's exercise of his constitutional rights. This the Court feels is neither compelled nor warranted by the evidence presented.
It is clear that the trial court was aware of the applicable law in cases involving due process claims of non-tenured teachers; therefore, the only question is whether the trial judge erroneously applied that law to the facts of this case. *Page 241 
The appellee asks us to focus our attention on the premise that Abston, as the trial judge concluded, failed to meet his burden of proof. Viewing the evidence in a vacuum, one could conclude, as did the trial judge, that neither principal Lawrence nor the school board knew of Abston's activities involving the "gate receipts" matter, but we do not sit in a vacuum. We have read the whole record and we are convinced that from the evidence presented, it is not mere speculation to conclude from the direct and circumstantial evidence that Lawrence must have known that Abston was connected with the effort to get him fired. In any event, there was direct evidence that the board knew of Abston's involvement, at least as early as when the Abston affidavit was filed with the board by the "Concerned Citizens of Reform School District." The aim of this group was to fire the principal and keep the coach.
Based on the foregoing, we cannot but conclude that Abston, at least minimally, met the standard of showing that Lawrence's recommendation for his nonrenewal was based upon Abston's efforts in the gate receipts matter. The evidence here is certainly as compelling as that found sufficient in Lindsey v.Board of Regents of University System of Georgia, 607 F.2d 672
(5th Cir. 1979), to show the existence of a constitutional right to freedom of speech. This Court's case of Foster v.Blount County Board of Education, 340 So.2d 751 (Ala. 1976), cited by the trial judge, is not to the contrary. There, this Court, without applying any presumption of correctness to the trial court's findings, reviewed the whole record and concluded that the trial judge was correct in finding that the teacher had failed to meet her burden of proof. Also, there, the school board, at trial, gave the reason for its decision to nonrenew, something the school board did not do in this case. In Foster, Justice Shores, writing for the Court, stated:
 Under the Alabama law, it is not disputed that a nontenured teacher has no right, statutory or otherwise, to be re-employed. However, the nonrenewal of a teacher's contract may entitle him to procedural due process if the reasons for the nonrenewal stigmatize him, or injure his prospects for future employment. It is also conceded that the Alabama statute do not require the boards of education to state reasons for the nonrenewal of a nontenured teacher's contract of employment. Of course, the failure to renew one's contract cannot be predicated on the exercise by that person of his constitutional rights. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).
 The Supreme Court of the United States held in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2071, 33 L.Ed.2d 548 (1972), that the Constitution does not require an opportunity for a hearing before the renewal of a nontenured teacher's contract, unless the teacher can show that the decision not to renew deprived him of an interest in "liberty" or that he had a "property" interest in continued employment.
 In the instant case, Mrs. Foster has failed to prove any facts which would bring her within the protective shield of Sindermann or Roth. The record shows only that she requested a maternity leave; that this request was not passed on to the board of education, but that instead the superintendent of education recommended that the employment contract of Mrs. Foster, a nontenured teacher, not be renewed. The Board unanimously agreed that her contract would not be renewed. No reason was assigned, and no reason was stated in the statutory notice which was sent to her, informing her that her contract would not be renewed. The reason given at the trial of this case was excessive absences. Mrs. Foster did not testify and, therefore, did not refute the charge of excessive absences.
In Foster, this Court found support for the trial court's determination that Foster had failed to sustain her burden. We cannot find in this record the same support for the trial judge's legal conclusion that Abston failed to sustain his burden of proof. *Page 242 
Since the trial judge based his denial of relief upon the principle that Abston failed to meet his burden of proof, and since we find that there was sufficient evidence to show that his nonrenewal may have been based on his having exercised his constitutional right of freedom of expression, we hold that Abston is entitled to have the Board show that the reason for his nonrenewal, at the time the decisions were made, was not based upon his exercise of freedom of speech; therefore, the judgment is due to be reversed and the cause remanded.Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731,20 L.Ed.2d 811 (1968).
The question to be answered in this case on remand is: Would the Board have reached the same decision in Abston's case absent its knowledge, if any, of Abston's involvement in the "gate receipts" matter, or in the attempt to get Lawrence fired? Mount Healthy City School District Board of Education v.Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
REVERSED AND REMANDED.
All the Justices concur.