Mr. Maddox, a discharged deputy sheriff, appealed to this court from a circuit court judgment which upheld his dismissal from his job as such deputy by the sheriff, A.B. Clark.
After hearing the evidence, the trial court rendered and entered a comprehensive judgment, the pertinent portions thereof as to the present appeal being as follows:
 "JUDGMENT ON APPEAL OF PERSONNEL BOARD DECISION
"The matter before the Court for consideration is the appeal of the Plaintiffs from a decision of the Personnel Board of Houston County, Alabama, made on February 11, 1982, involving their discharge as classified employees of Houston County, Alabama. A trial de novo having been held on such appeal and testimony and evidence having been presented, upon consideration of such, the Court makes the following findings and conclusions:
"Prior to January 19, 1982, the Plaintiffs, Gerald Monday and James A. Maddox, were formally employed as deputies of the Sheriff of Houston County, Alabama. They were employees of Houston County with all of the rights and privileges accorded by Act 1049, Acts of Alabama, Regular Session, 1973, which Act established a civil service system for employees of Houston County.
"Under such civil service system, the Sheriff of Houston County is the appointing authority responsible for all personnel action decisions made with respect to employees of the Houston County Sheriff's Department.
"According to the testimony of Deputy Maddox, on or about December 30, 1981, he was asked by the Sheriff of Houston County, Alabama, A.B. Clark, to contact several persons on the jury venire list which listed prospective jurors for the trial of criminal charges then pending against the Sheriff. Maddox contends that he was told to contact certain jurors, engage them in conversation, and find out their opinion of the Sheriff; but that he was not to mention any specific case.
"According to the testimony of Sheriff Clark, Maddox, on his own initiative, requested to see the jury venire list and after he looked over it he wrote several names down, stating that he was going to check to see if some of the names were people he knew when he was in the insurance business. Sheriff Clark stated that he did not ask Maddox to talk to any of the prospective jurors and in fact instructed him not to do so.
"In any event, Maddox discussed the matter of talking to prospective jurors with two superior officers on separate occasions. Both advised him that such would be illegal and that he should not do it.
"Thereafter, he contacted Deputy Lieutenant Monday, who was also an officer superior to Maddox, regarding the matter. Monday advised him not to talk to the people, that it was against the law, but that Maddox could tell the Sheriff he had. Maddox, however, stated that he was afraid the Sheriff would double check him. Monday then told him that he would put him in touch with a State investigator if that was what he wanted.
"Monday then telephoned Investigator Lloyd Arrington of the Alabama Bureau of Investigation and informed him of the *Page 793 
allegations made by Maddox. Arrington asked Monday to put him in touch with Maddox and Monday arranged a meeting.
"Maddox then met with Investigator Arrington and with Ray Acton the Assistant Alabama Attorney General prosecuting the criminal charges against Sheriff Clark. Maddox stated that he told them `the whole story', that he had not been asked to influence anyone, but just to find out the opinions of certain prospective jurors regarding Sheriff Clark. Although Maddox did not know if what he had reported to Arrington and Acton was a crime, he stated that Arrington and Acton convinced him that such was in fact a crime.
"The result of Maddox's meeting with Arrington and Acton was that Arrington and Acton made a decision to commence an investigation regarding jury tampering. Maddox believed that such was a lawful investigation based upon what Arrington and Acton had told him.
"Arrington and Acton then asked Maddox would he be willing to wear a `body mike' so that a future conversation between Maddox and Sheriff Clark could be transmitted and recorded. Maddox agreed to do such.
"Thereafter, on the night of January 10, 1982, Maddox was fitted with a transmitter by State investigators and a conversation between him and Sheriff Clark was transmitted and recorded by such State investigators. On the basis of such, a motion was filed by the State in the criminal cases pending against Sheriff Clark asking the Court to quash the jury venire due to allegations of jury tampering by the Sheriff.
"A hearing was held on the State's motion to quash the jury venire on January 18, 1982 before Circuit Judge Paul J. Miller at which such hearing Deputy Maddox testified in regard to his contentions as to the Sheriff's requests regarding his talking to prospective jurors and a tape recording of Deputy Maddox's January 10, 1982 conversation with Sheriff Clark was played. The State's motion to quash the jury venire was denied by Judge Miller.
"Deputy Maddox testified that he did not talk to any of the prospective jurors but that he had made statements to the Sheriff that he had because he was told to do so by the State investigators.
"On or about January 19, 1982, the Sheriff discharged James A. Maddox from his employment as a deputy sheriff giving the following reasons for disciplinary action:
"(1) `Insubordination'.
"(2) `Spreading malicious lies in an attempt to embarrass or injure the Sheriff'.
"(3) That `Maddox told lies to members of this department with reference to contacting jury members. He then told lies to State investigators and hid a microphone on himself and attempted to obtain damaging, untrue information on me'.
"(4) That `all working relationship has been destroyed and it is not in the benefit of the County or law enforcement for him to continue due to the actions taken by him over the past three to four weeks'.
"(5) And, then subsequently, on February 5, 1982, giving the following additional reasons:
"A. `Insubordinate attitude', and
"B. `Because the good of services will be best served by your termination'.
"Also, on or about January 19, 1982, the Sheriff discharged Deputy Gerald Monday from his employment as a deputy sheriff giving . . . reasons for disciplinary action.
. . . .
"Under Act No. 1049, Acts of Alabama, Regular Session, 1973, which Act established a civil service system for employees of Houston County, Alabama, a deputy sheriff may be dismissed by the Sheriff for the following reasons:
"(A) Any violation of provisions of the Houston County Civil Service System Act; or
"(B) Whenever the good of the service will be served thereby; or
"(C) Whenever the deputy sheriff's work so warrants; or
"(D) Whenever the deputy sheriff's performance so warrants; or *Page 794 
"(E) Whenever the employee's conduct on or off the job so warrants; or
"(F) Whenever the employee's insubordinate attitude so warrants.
"`One of the purposes of Civil Service laws is to take from the appointing officer the right of arbitrary removal of an appointee; absent such [laws] a public employee has no protection against suspension and removal and he may be suspended or removed with or without cause.' 15A Am.Jur.2dCivil Service § 52 (1976).
"Essentially, Deputy Maddox and Deputy Monday were discharged from their employment as deputy sheriffs on charges made by the Sheriff that they were guilty of `insubordination' and that their discharge was for `the good of the service'.
"`Insubordination' has been defined by our Courts as the wilful refusal of an employee to obey an order of a superior officer so long as that order is reasonably related to the duties of the employee. Heath v. Alabama State TenureCommission, 401 So.2d 68 (Ala.Civ.App. 1981); Howell v. AlabamaState Tenure Commission, 402 So.2d 1041 (Ala.Civ.App. 1981). Under the testimony and evidence presented at the trial of this appeal, this Court does not find any evidence of a wilful refusal of Deputy Maddox or Deputy Monday to obey any order of a superior officer, and, therefore, their discharge from employment as deputy sheriffs of Houston County cannot be justified on the basis of `insubordination'.
"This Court must then look to see as to whether or not their discharge from employment as deputy sheriffs of Houston County, Alabama, can be upheld on the basis that `the good of the service will be served thereby'. The term `for the good of the service' has been variously defined as follows:
"(1) The term `for the good of the service' means incompetency or other reasons relating to the effective discharge of duties. State ex rel. Hartnett v. Zeller,135 Conn. 438, 65 A.2d 475 (1949).
"(2) Discharge of a civil service employee for `good of the service' or `for cause' implies some personal misconduct, or fact, rendering the employee's further employment harmful to the public interest. State ex rel. Eckles v. Kansas City,257 S.W. 197, (Mo.App. 1924).
"(3) Removal for `good of the service' infers that in some respect the officer failed to perform his duties, was incompetent, inefficient or an unsuitable person for the position to which he was appointed. Ayres [Ayers] v. Hatch,175 Mass. 489, 56 N.E. 612 (1900).
"(4) Limitation of removal to the `good of the service' imparts cause which in law constitutes a valid ground for the exercise of removal power. Davis v. Cousineau, 97 R.I. 85,196 A.2d 153 (1963).
"Therefore, to discharge an employee `for the good of the service' is to discharge him for a `cause' which interferes with the effective discharge of his duties and/or the effective discharge of the duties of the department for which he works, so as to make his continued employment harmful to the public interest.
"`The phrase "for cause" . . . means reasons which the law and sound public policy recognize as sufficient warrant for removal, that is, legal cause, and not merely cause which the appointing power in the exercise of discretion may deem sufficient'. State ex rel. Doherty v. Finnegan,25 Conn. Sup. 390, 206 A.2d 477 (1964); See Peseau v. Civil Service Board ofTuscaloosa County, 385 So.2d 1310 (Ala.Civ.App. 1980).
"`Cause . . . means legal cause, and not any cause which the officer authorized to make such removal may deem sufficient . . . The cause must be one which specifically relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public. The cause must be one touching the qualifications of the officer or his performance of duties, showing that he is not a fit or proper person to hold the office.' State ex rel. Whalen v. Welliver,60 Nev. 154, 104 P.2d 188 (1940); See Peseau, supra. *Page 795 
"An appointing authority, in this case the Sheriff of Houston County, has the authority to discharge a public employee if such employee's relationship with the superior officer has to be one of confidence and cooperation and if such relationship is necessary to properly discharge the department's functions and a lack of cooperation would impair the efficient operation of the department. Floyd v. Alabama Historical Commission,388 So.2d 182 (Ala. 1980); Abbott v. Thetford, 529 F.2d 695 (5th Cir. 1976).
"There is no doubt but that should Deputy Maddox and Deputy Monday continue to be employed by the Sheriff's Department of Houston County that there will not be a relationship of complete trust and confidence between them and the department head, Sheriff Clark, due to their involvement in the accusations made against him regarding misconduct on his part. There is no doubt but that the working relationship between such deputies and Sheriff Clark, and possibly other co-workers, would not be completely harmonious, to say the least.
"However, in matters of compelling public concern (such as accusations or allegations of misbehavior by public officials), a public employee's right to speak out on such an important matter must be protected from the threat of retaliatory discharge. Pickering v. Board of Education, 391 U.S. 563,88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Atcherson v. Siebenmann,605 F.2d 1058 (8th Cir. 1979).
"`[T]he creation of disharmony cannot be so feared as to silence the critic who would inform the public of (the alleged) misbehavior by public officials.' Atcherson v. Siebenmann,supra.
"It may be noted here that none of the evidence presented at the trial of this appeal appears sufficient to support the criminal charge of `jury tampering' by anyone. Alabama CriminalCode, Sec. 13A-10-128 (a) states that `a person commits the crime of jury tampering if, with intent to influence a juror's vote, opinion, decisions or other action in the case, he attempts directly or indirectly to communicate with a juror other than as a part of the proceedings in the trial of the case.' There was no evidence of any attempt to influence any prospective juror. In fact Deputy Maddox testified that he had not been asked to influence anyone but just to find out the opinions of certain prospective jurors regarding Sheriff Clark. Even so, conduct involving direct contact with prospective jurors is [undesirable] and would be highly suspicious. Nevertheless, such is not the question presently before this Court.
"In any event, `To say an employee reporting what he believes is going on is guilty of misconduct if he cannot prove it, is tantamount to saying he is not to transmit anything at all. Any regulation which would compel the critic of official conduct to guarantee the truth of all his factual assertions — and to do so on pain of dismissal from his job — leads to "self-censorship", a result which cannot be tolerated. . . .'Swaaley v. United States, 376 F.2d 857 (Ct.Cl. 1967).
"It is well recognized that a public employee cannot be discharged for exercising his or her constitutionally protected rights of free speech. Abston v. Woodard, 398 So.2d 237 (Ala. 1981); Mount Healthy City Board of Education v. Doyle,429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Perry v. Sindermann,408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Speiser v.Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).
"As the United States Supreme Court stated in Garrity v. NewJersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), `policemen are not relegated to a watered-down version of constitutional rights'.
"The problem in any case is to arrive at a balance between the interests of the employees, as a citizen, in commenting upon matters of public concern and the interest of the governmental entity, as an employer, in promoting the efficiency of the public services it performs through its employees. Pickering v. Board of Education, supra.
"In Hanneman v. Breier, 528 F.2d 750 (7th Cir. 1976), the Court applied Pickering, *Page 796 supra, to a case involving the disciplining of policemen for disclosing the existence of a confidential internal investigation. The conduct clearly violated an existing and otherwise valid confidentiality regulation. Yet, the Court refused to sustain the discharge because the police department did not `show a State interest in confidentiality applicable on these facts which outweighs the public and individual interests in the particular statements made.
"This Court finds that it must make a distinction between the situation of Deputy Monday and the situation of Deputy Maddox herein. The actions of Deputy Monday relevant to this matter went no further than the exercise of his rights of free speech in communicating information which he possessed which he in good faith believed suggested impropriety on the part of Sheriff Clark, whether such was in fact the case or not. The actions of Deputy Maddox relevant to this matter not only included an exercise of speech, but also included actions taken by him in surreptitiously electronically transmitting a private conversation between himself and Sheriff Clark to State investigators who were at the time involved in the prosecution of Sheriff Clark under pending criminal charges.
"The actions taken by both deputies were naturally detrimental to their future working relationship with their superior officer, Sheriff Clark, and to the efficient operation of the Houston County Sheriff's Department, in regard to a relationship of confidence and cooperation.
"However, Deputy Monday's discharge from employment may not reasonably be justified in that it resulted from his exercise of constitutionally protected speech which outweighed the interests of the governmental entity. Deputy Maddox's discharge from employment may be reasonably justified in that it resulted from unprotected conduct as well as, and as opposed to, protected speech.
"Further, this Court finds that the actions of Deputy Maddox would reasonably totally preclude any future working relationship between himself and Sheriff Clark.
"Although the use of secret agents with electronic devices is a valid and frequently used means of investigation by law enforcement, the `bugging' of a sheriff by one of his deputies, whether such was justified or not, is hardly conducive to and would reasonably totally preclude any future working relationship between the deputy and the sheriff. The deputy in such a situation would reasonably be expected to have known that the inevitable results of his action would be abrupt termination of his employment.
. . . .
"`Public employees do not foreswear the protections of the Constitution simply by swearing to uphold the Constitution. Public employers are fully justified in protecting the integrity of their work force and in maintaining the efficiency of individual employees; but such legitimate missions cannot be used as an excuse to rid their work force of an employee simply because he had exercised the rights guaranteed by fundamental law. In each case, reviewing Courts must set what was done in the context of contemporaneous events and reasons, to make sure that a true balance is struck between the responsibility of public employers and the rights of their employees'. Tygrett v.Barry, 627 F.2d 1279 (D.C. Cir. 1980). Applied to this case, that process precludes judicial sanction of the action taken against the Plaintiff, Gerald Monday and does not preclude judicial sanction of the action taken against the Plaintiff, James A. Maddox.
"WHEREFORE, by reason of said findings of fact and conclusions of law, it is hereby,
"ORDERED, ADJUDGED, AND DECREED BY THE COURT AS FOLLOWS:
"(A) That the decision of the Personnel Board of Houston County, Alabama, pertaining to the Plaintiff, James A. Maddox, discharging him [as] a classified employee of Houston County, Alabama, is affirmed.
"(B) That the decision of the Personnel Board of Houston County, Alabama, pertaining to the Plaintiff, Gerald Monday, *Page 797 
discharging him as a classified employee of Houston County, Alabama, is reversed and he is reinstated as an employee of Houston County, Alabama, with pay." (Citations corrected.)
In his present appeal from that judgment of the circuit court, Deputy Maddox does not dispute that court's factual findings. The trial court properly applied the correct law to such facts and reached the right conclusion. Therefore, we adopt the judgment of the learned trial court as the opinion of this court and affirm.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.