PER CURIAM.
This is the second appeal in this case. In Abston v. Woodard, 398 So.2d 237 (Ala.1981) (Abston I), this Court reversed the trial court and remanded the cause for determination of whether the nonrenewal of Abston’s employment contract was imper-missibly based on his exercise of First Amendment free speech rights. On remand the trial court allowed no inquiry into other reasons for non-renewal and only required the defendant school board members to testify in summary and conelusory terms whether Abston’s protected conduct motivated them in deciding not to renew his contract. This limitation of the scope of inquiry was error, and we again reverse and remand.
The facts are set out fully in Abston I, so we shall reiterate them only briefly here. Richard A. Abston was a successful football coach at Pickens County High School. In his third year, while he was still untenured, the Pickens County Board of Education notified him that his contract would not be renewed. The Board acted on the recommendation of the superintendent of the Pickens County School Board, who acted on the recommendation of James Lawrence, the principal of Pickens County High School. Abston had instigated an investigation into football game gate receipts, which were under Lawrence’s control, and found that they were short by amounts ranging from $250.00 to $1000.00 per game. Lawrence resigned immediately after the Board notified Abston of his contract non-renewal.
Abston sued the Board, alleging that his nonrenewal was based on his complaints about deficits in the gate receipts for home football games. The trial court entered judgment for the Board, finding that Ab-ston had not mef his burden of proving that his speech was protected and was a substantial or motivating factor in the Board’s decision not to rehire. This Court reversed, stating in the course of the opinion, “we cannot but conclude that Abston, at least minimally, met the standard of showing that Lawrence’s recommendation for his nonrenewal was based upon Abston’s efforts in the gate receipts matter.” Abston I, supra, at 241.
The opinion concluded,
“Since the trial judge based his denial of relief upon the principle that Abston failed to meet his burden of proof, and since we find that there was sufficient evidence to show that his nonrenewal may have been based on his having exercised his constitutional right of freedom of expression, we hold that Abston is entitled to have the Board show that the *1263 reason for his nonrenewal, at the time the decisions were made, was not based upon his exercise of freedom of speech; therefore, the judgment is due to be reversed and the cause remanded.
“The question to be answered in this case on remand is: Would the Board have reached the same decision in Abston’s case absent its knowledge, if any, of Ab-ston’s involvement in the ‘gate receipts’ matter, or in the attempt to get Lawrence fired?”
Id., at 242 (citations omitted).
On remand, the parties and the court reopened the case for defendants to prove that Abston’s nonrenewal was not based on his exercise of free speech rights. The court observed,
“... I based my initial ruling upon the fact that Mr. Abston failed to meet his burden of proof showing that his non-renewal was based on his having exercised his constitutional rights. The Supreme Court, apparently, establishes a new rule of evidence and they said that he proved that he may have been dismissed for that reason.
“I didn’t know he had any burdens of proof where the test was whether something ‘may have been.’ I thought the burden of proof was whether or not you determine that it had, in fact, been or had not been.”
The court quoted the final paragraph of Abston I, quoted above, and determined: “[T]he hearing will be limited to that question. It is not relevant if he was not renewed for a reason other than his involvement in this matter.”
Counsel for Abston stated his position: “Judge, we disagree with the court’s interpretation and our position is that we have • made out a prima facie case and the Board must now defend against. Our position would be that the scope of inquiry is much broader.” The hearing proceeded on the basis stated by the trial court. Counsel for the defendants established that the Board members voted not to renew Abston’s contract based on the superintendent’s recommendation without any further discussion. He then asked each of them whether any involvement by Abston in the gate receipts matter or the effort to have Lawrence fired influenced their decision, to which each answered, “No.”
Abston’s counsel asked the Board members whether they were aware of the controversy and they testified that they were, either through participation on the Board or through public knowledge as citizens, or both. After the first witness, counsel for Abston remarked, “Judge, in light of your ruling that I can’t inquire into the reasons that he may have had individually or so forth, I don’t have any further questions.”
We agree with Abston’s position that the scope of inquiry should have been broader on remand. The clear import of the prior opinion of this Court is that Abston had presented a prima facie case and the Board must rebut by showing “by a preponderance of the evidence that it would have reached the same decision as to respondent’s reemployment even in the absence of the protected conduct.” Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). See also, Givhan v. Western Line Consolidated School District, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).
Mount Healthy, the paradigm case in this area, presents a situation strikingly similar to the one at' bar. Nonrenewal of the contract of an untenured teacher (Doyle) was recommended by the superintendent to the Board, which accepted the recommendation without discussion. A crucial difference is that in Mount Healthy there was evidence of reasons why Doyle would not have been rehired independent of his constitutionally protected conduct; here, there was none, other than the bare statement by the Board members that in this, as in virtually all other cases, they accepted the superintendent’s recommendation. This will not suffice in the face of their admission that they knew that the controversy surrounding Ab-ston stemmed from his attempt to stop the loss of school funds through apparent embezzlement.
*1264 Alabama law requires no justification or reason for not renewing the contract of an untenured teacher. Code 1975, § 16-24—1 et seq.; Foster v. Blount County Board of Education, 340 So.2d 751 (Ala.1976). Such was the case also under the law applicable in Mount Healthy, however, and the United States Supreme Court held that Doyle “may nonetheless establish a claim to reinstatement if the decision not-to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms.” Mount Healthy, supra, 429 U.S. at 283-84, 97 S.Ct. at 574 (citation omitted).
The court below placed undue emphasis on the statement in Abston I that Abston’s nonrenewal “may have been” based on his exercise of First Amendment rights. This Court could not have said, as the trial court seems to think it should have, that Abston’s nonrenewal was based on his protected conduct. Such would have amounted to rendering the cause, when the opinion merely held that Abston had made out a prima facie case. At any rate, the opinion clearly held that Abston had made out at least a minimal prima facie case and the Board would have to rebut by showing either that the protected conduct did not influence the decision or, if it did, that Abston would not have had his contract renewed anyway.
In the face of the Board members’ acknowledgement that they were aware of the reasons for the controversy over Ab-ston, an assertion that they followed the superintendent’s recommendation as a matter of course does not rebut evidence tending to prove that the nonrenewal was based on the protected conduct. Abston’s prima facie case raises the inference that Lawrence had a retaliatory motive in recommending non-renewal to the superintendent. If the superintendent made his recommendation only because of Lawrence’s recommendation, the impermissible motive carried through to the Board’s action, even though the Board members asserted that they acted only on the superintendent’s recommendation and not out of a motive relating to Abston’s protected conduct.
With the Board taking the position that it acted solely on the superintendent’s recommendation, it now has the burden of going forward with evidence that the superintendent would have made the same recommendation absent Abston’s protected conduct. In Waters v. Chaffin, 684 F.2d 833 (11th Cir.1982), the Eleventh Circuit Court of Appeals, applying the Mount Healthy test, held:
“The employee has the initial burden of demonstrating that his speech was constitutionally protected and was a substantial or motivating factor in the decision to discipline him. If the employee meets this twin burden, the burden of proof shifts to the government to show by a preponderance of the evidence that it would have reached the same decision to discipline the employee in the absence of the protected speech.”
Id., at 837 (footnote omitted).
Lest the Board or the trial court assume that the controversy[1] arising from Abston’s discovery suffices, without more, as evidence that the superintendent would have made the same recommendation even without Lawrence’s tainted recommendation to the superintendent, we point out that the Federal courts for the eleventh circuit and the former fifth circuit have rejected such arguments:
“... In Sterzing v. Fort Bend Independent School District, 496 F.2d 92 (5th Cir.1974), the former fifth circuit held that the existence of an antagonistic relationship could not justify the refusal to reinstate a teacher who had been discharged for exercising his first amendment rights. In reaching this conclusion, the court stated that ‘[ejnforcement of constitutional rights frequently has disturbing consequences. Relief is not re *1265 stricted to that which will be pleasing and free of irritation.’ Id. at 93.”
Allen v. Autauga County Board of Education, 685 F.2d 1302, 1305 (11th Cir.1982).
Of course, if the controversy were such as to disrupt the functioning of the school, or if Abston conducted himself in such a way as to exacerbate the problems, the mere fact that the controversy arose from protected speech in the first instance should not completely shield Abston. Cf. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). There is no evidence of such extenuating circumstances in the record, however. If, on a fuller hearing, the Board rebuts Abston’s prima facie case that he was not rehired solely because of his conduct protected by the First Amendment, the trial court shall weigh the evidence as factfinder and enter judgment accordingly.
For the reasons stated, the judgment is reversed and the cause remanded.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., and FAULKNER, and BEATTY, JJ., dissent, with opinion by TORBERT, C.J.

. Boyd Edgeworth, one of the Board members, testified:
“People were talking about it pretty strong. About as many against it as there was for it and a lot of people didn’t say anything. It was really a hassle.”